30 P.3d 131

Jason P. WOZNIAK, Petitioner,

v.

The Honorable Frank T. GALATI, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

State of Arizona; City of Phoenix, Real Party in Interest.

No. 1 CA–SA 01–0097.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 9, 2001.

Theodore C. Jarvi, Tempe, Attorney for Petitioner.

F. Tyler Rich, Assistant City Prosecutor, Phoenix, Attorneys for Real Party in Interest.

## OPINION

BERCH, Judge.

¶ 1 Jason P. Wozniak was arrested for violations of Arizona Revised Statutes ("A.R.S.") sections 28–1381(A)(1) (Supp.2000) (prohibiting driving while impaired to the slightest degree) and 28–1381(A)(3) (Supp. 2000) (prohibiting driving while there is a drug or its metabolite in the body). He was tried in municipal court and a jury found him not guilty of driving while impaired to the slightest degree (the (A)(1) charge), but

guilty of driving while he had a drug or its metabolite in his body (the (A)(3) charge). He was sentenced to ten days in jail, nine of which were suspended. On appeal, the superior court affirmed the judgment and sentence. Wozniak petitioned for review of the superior court's decision, arguing that the results of the drug screen test introduced at trial were inadmissible, that there was insufficient evidence to support his conviction, and that he could be sentenced only to probation under A.R.S. § 13–901.01 (2001). We accepted jurisdiction and denied relief, with this opinion to follow.

## BACKGROUND

¶ 2 On September 3, 1999, a police officer spotted Wozniak driving a vehicle bearing expired registration tags. After Wozniak pulled the car to the side of the road, the officer noted that Wozniak had trouble retrieving his driver's license from his wallet and that his hands and arms were shaking. The officer also observed that Wozniak's pupils were "pinpoint" and that he had difficulty pronouncing words.

¶ 3 The officer administered four field sobriety tests, all of which Wozniak failed. During one of the tests, Wozniak complained of feeling dizzy, dropped to one knee, and asked for a drink of water. Wozniak admitted during the stop that he had consumed two beers and had smoked a "bowl" earlier that day. Wozniak was arrested, and a subsequent search revealed a small amount of marijuana in his pocket. Later, Wozniak again admitted he had smoked a "bowl" or a "bowl and a half" of marijuana that morning. At the police station, two breath tests did not detect any alcohol in Wozniak's system. At police request, Wozniak produced a urine sample. Before providing the sample, Wozniak drank a large quantity of water, which he promptly threw up.

¶ 4 A screening urinalysis test indicated the possible presence of cannabinoids in Wozniak's system. Standard police procedure calls for a second, confirming test if the screening test is positive. In this case, however, the urine sample Wozniak provided was insufficient to allow the police to conduct the second, confirming test. The State nonetheless sought to introduce the screening test at Wozniak's trial.

¶ 5 Wozniak disputed the admissibility of the screening results, arguing that they failed to meet the standard for scientific evidence set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). *See State v. Bible*, 175 Ariz. 549, 580, 858 P.2d 1152, 1183 (1993) (confirming that *Frye* remains the standard for admissibility of scientific evidence in Arizona); *Logerquist v. McVey*, 196 Ariz. 470, 480, ¶ 31, 1 P.3d 113, 123 (2000) (same). At a *Frye* hearing, Wozniak's experts both testified that screening tests are not generally accepted in the scientific community to identify the presence of cannabinoids in one's system. But the experts' concerns with the screening test dealt only with the accuracy of the test, not with whether it is generally accepted in the scientific community that drug screens can detect the presence of drugs. The experts noted that the drug screen tests sacrificed accuracy for cost, that any positive result from a drug screen should be followed with a more accurate test, and that the false positive rate for the screening test was higher than the rate for the follow-up test. Significantly, Wozniak presented no evidence that the scientific principles underlying the drug screen test were not accepted in the relevant scientific community.

¶ 6 Wozniak also disputed the imposition of a jail sentence, arguing that, because he was convicted of personal drug possession or use, A.R.S. § 13–901.01 entitled him to be sentenced to probation. Wozniak maintained that his conviction for driving while having a drug in his body was merely a personal use offense, not a driving offense. He reasoned that the offense for which he was convicted did not include an element of impairment. His crime, he concluded, therefore fell squarely within the provisions of section 13–901.01.

■ ¶ 7 We accepted jurisdiction because this case raises novel issues of statewide significance and turns on legal principles rather than factual determinations. *See S.A. v. Superior Court (Beatty)*, 171 Ariz. 529, 530, 831 P.2d 1297, 1298 (App. 1992); *State ex rel. Romley v. Brown*, 168 Ariz. 481, 482,

815 P.2d 408, 409 (App. 1991) (accepting jurisdiction of blood test issue because it was of statewide importance). Also, because Wozniak appealed from municipal court to superior court, he has exhausted his appellate remedies and may obtain relief in this court only by special action. *See State v. Superior Court (Norris),* 179 Ariz. 343, 344, 878 P.2d 1381, 1382 (App. 1994); A.R.S. § 22–375(A) (1990) (allowing an appeal "from a final judgment of the superior court in an action appealed from ... a police court, [only] if the action involves the validity of a tax, impost, assessment, toll, municipal fine or statute"); Ariz. R.P. Spec. Act. 1(a) (prohibiting special action review "where there is an equally plain, speedy, and adequate remedy by appeal").

### A. The Frye Issue

■ ¶ 8 When reviewing a trial court's ruling on a motion to suppress, we view the facts in the light most favorable to sustaining the trial court's ruling, and we will not disturb the ruling unless we find clear error. *State v. Hyde,* 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996); *see State v. Blackmore,* 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996) (requiring "great deference to the trial court's factual determination"). We review de novo, however, "whether a scientific principle used as a basis for expert testimony is generally accepted in the relevant scientific community." *State v. Johnson,* 186 Ariz. 329, 334, 922 P.2d 294, 299 (1996) (citing *Bible,* 175 Ariz. at 578, 858 P.2d at 1181).

■ ¶ 9 Wozniak relies solely on *Frye* to support his contention that the drug screen results are not generally accepted as providing scientific evidence of the presence of a drug or its metabolite, and therefore the drug screen should not have been admitted as evidence against him.[1] The *Frye* test is designed to ensure that any scientific evidence considered by the jury is based on a theory that "has been generally accepted in the relevant scientific community." *Id.* at

331, 922 P.2d at 296. Its purpose is to prevent the jury "from being misled by unproven and ultimately unsound scientific methods." *State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 199, 644 P.2d 1266, 1285 (1982). Scientific evidence "is often accepted in our society as synonymous with truth, [and] there is a substantial risk of overweighting by the jury." *Id.* (quoting 1 Morris K. Udall & Joseph M. Livermore, *Law of Evidence* § 102, at 212 (2d ed.1982)). Thus, the goal of the *Frye* test is to ensure that scientific evidence admitted at trial is reliable, yet not so unfairly prejudicial as to outweigh its probative value. *Id.* at n. 4.

■ ¶ 10 But despite Wozniak's assertion, *Frye* is not the concern here. There is a subtle but critical distinction between scientific theory and the application of a theory. The *Frye* test is concerned only with the former, while the jury considers the application of the theory and in doing so assigns such weight to the evidence as it finds the evidence deserves. Wozniak has not alleged that the underlying scientific theory-that drug use can be determined by a chemical analysis of a person's urine-is novel or controversial. Rather, Wozniak questions the accuracy of the drug screen test itself. *See State v. Van Adams,* 194 Ariz. 408, 418–19, ¶ 34, 984 P.2d 16, 26–27 (1999).

¶ 11 A similar analytical issue arose in *Van Adams.* There, the defendant in a criminal case challenged the application of certain identification methodologies to DNA evidence. Like the scientific principles underlying the drug screen at issue before us, the theories underlying DNA identification were not in question; the defendant attacked only the application of the theory. *Id.* The defendant's attack, the court noted, questioned the credibility of the evidence or weight to be accorded it by the jury, not its admissibility under *Frye. Id.* at 419, ¶ 34, 984 P.2d at 27. The court approved the settled proposition that once a scientific theory, principle, or test is generally accepted in the relevant scientific community, the jury has the task of "weigh-

---

1. Wozniak did not argue that the expert testimony was so equivocal that it would not assist the trier of fact, nor did he argue that the State's experts were not qualified to render their opinions, as he might have done pursuant to Rule 702

of the Arizona Rules of Evidence. Wozniak explicitly rejected such arguments at the *Frye* hearing and did not address them in his briefs to this court. We therefore do not consider them here.

ing the significance of any errors that may have occurred in applying generally accepted principles to the facts of a particular case." *Id.*

¶ 12 The supreme court's reasoning resolves the inquiry before us. Wozniak presented no evidence that the scientific theory applied in analyzing his urine for the presence of cannabinoids was not accepted in the relevant scientific community. On the contrary, Wozniak's experts at the *Frye* hearing tacitly accepted the principle that a chemical analysis of a person's urine can reveal the presence of drugs in the system. Given the lack of evidence that the scientific principles underlying the screening test are not generally accepted in the relevant scientific community, the trial court did not err in allowing the drug screen results to be admitted so that the jury could assess the weight to be accorded the evidence.

¶ 13 No one disputes that it would have been better for the police to have administered a second test. The question before us, however, is whether the *Frye* test required the trial court to preclude admission of such scientific evidence as was available. The answer is no.

### B. Is a Chemical Analysis Required for Conviction Under A.R.S. § 28–1381(A)(3)?

¶ 14 Relying on *State v. Superior Court (Blake)*, 149 Ariz. 269, 718 P.2d 171 (1986), Wozniak argues that a chemical analysis of a person's blood, breath, or urine is required to sustain a conviction under A.R.S. § 28–1381(A)(3), which provides as follows:

> It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances:
>
> . . . .
>
> 3. While there is any drug defined in [A.R.S.] § 13–3401 or its metabolite in the person's body.

In *Blake,* a motorist was charged with DUI under the predecessor statute, which made it unlawful for a person with a blood alcohol content ("BAC") of more than .10 to operate a vehicle. *Blake* concerned whether a hori-

zontal gaze nystagmus test was sufficiently reliable to show probable cause to arrest. The court held that it was, but stated in dicta that so "holding *does not mean* that evidence of nystagmus is admissible to prove BAC of .10 percent or more in the absence of a laboratory chemical analysis of blood, breath or urine." *Id.* at 279, 718 P.2d at 181. The court required that "regardless of the quality and abundance of other evidence, a person may not be convicted of a violation of [A.R.S. § 28–1381(A)(2) ] without chemical analysis of blood, breath or urine showing a proscribed blood alcohol content." *Id.*

¶ 15 Wozniak argues that the *Blake* reasoning should also apply to violations of A.R.S. § 28–1381(A)(3) and would require the introduction of a chemical analysis before he could be convicted of having a drug or its metabolite in his body. We need not reach that issue, however, because Wozniak's conviction was supported by an admissible chemical analysis-the drug screen. Because, in a case charged under A.R.S. § 28–1381(A)(3), the State need prove only the presence of a drug or its metabolite and not any particular quantity of drugs in the body, the drug screen, even if somewhat unreliable, provided some evidence tending to establish the State's case. Additionally, the State presented substantial corroborating evidence that Wozniak was driving with a drug or its metabolite in his body: Wozniak admitted smoking marijuana only hours before his arrest, he failed several field sobriety tests, marijuana was found in his pocket, his speech was slurred, and his pupils appeared "pinpoint" at the time of his arrest. There was ample evidence from which the jury could conclude that Wozniak was driving while he had a drug or its metabolite in his body. In light of the substantial other evidence presented, we need not decide whether an additional or different type of chemical analysis is necessary to prove a violation of section 28–1381(A)(3). We also reserve for another day the question whether a drug screen test, standing alone, suffices to prove a violation of section 28–1381(A)(3).

### C. Is a Sentence of Probation Required by A.R.S. § 13–901.01?

¶ 16 Finally, Wozniak argues that driving while having a drug or its metabolite in the

body is essentially a conviction for personal drug use. Therefore, he argues, he should have been sentenced to probation under A.R.S. § 13–901.01, which requires probation for any person convicted of "personal possession or use of a controlled substance." Wozniak points out that a violation of A.R.S. § 28–1381(A)(3) requires only that a person use a proscribed drug at some point before driving. Nowhere in the language of section 28–1381(A)(3) is driving while impaired made a part of the offense. Because impairment is not part of an (A)(3) violation, Wozniak contends that it merely proscribes the personal use of illegal drugs, bringing it within the ambit of A.R.S. § 13–901.01.

¶ 17 Section 13–901.01, however, does not extend so far. The plain language of A.R.S. § 13–901.01(A) applies to "any person who is convicted of the personal possession or use" of drugs. But Wozniak was convicted of violating section 28–1381(A)(3), which, along with other statutes, regulates the privilege of driving on Arizona's public roads. The legislature apparently concluded that the public has a strong interest in deterring those who use banned substances from driving motor vehicles. *See State v. Hammonds,* 192 Ariz. 528, 531, 968 P.2d 601, 604 (App. 1998) (noting that "there is a rational basis for believing that the presence of an illicit drug's metabolite establishes the possibility of the presence of the active, impairing component of the drug. This possibility in turn justifies the legislature banning entirely the right to drive when the metabolite is present."). Thus, Wozniak's contention that section 28–1381(A)(3) is a personal drug-use statute subject to probation under A.R.S. § 13–901.01 is incorrect.

¶ 18 We are not unmindful of our decision in *State v. Pereyra,* 199 Ariz. 352, 18 P.3d 146 (App. 2001). In *Pereyra,* we held that a person convicted of personal drug possession within a school zone was entitled to probation, despite Arizona's drug-free school zone statute, A.R.S. § 13–3411 (2001), which seemed to require incarceration. *Pereyra,* 199 Ariz. at 355, ¶ 12, 18 P.3d at 149. The drug-free school zone statute renders persons convicted of possessing or using drugs within school zones ineligible for probation

and subject to increased penalties. *Id.* at 354, ¶ 4, 18 P.3d at 148. We applied A.R.S. § 13–901.01 to possession within a drug-free school zone because of 13–901.01's comprehensiveness in treating personal possession, because of its explicit language superseding laws that deny probation for personal possession, and because it does not specifically list among its exceptions possession or use in a drug-free school zone. *Id.* at ¶ 7. But the reasons we applied section 13–901.01 to personal possession in a drug-free school zone do not exist here. Section 28–1381(A)(3) does not proscribe personal possession or use; it proscribes driving under certain conditions. The drug-free school zone statute proscribed personal possession, the underlying offense intended to be covered by section 13–901.01, adding only the additional element of location. *See id.* at 355, ¶ 9, 18 P.3d at 149. Section 28–1381(A)(3), however, prohibits driving under circumstances that might pose a danger to others who drive on Arizona's roads. We conclude that A.R.S. § 13–901.01 does not mandate probation for violations of A.R.S. § 28–1381(A)(3).

## CONCLUSION

¶ 19 We affirm Wozniak's conviction and sentence for violating A.R.S. § 28–1381(A)(3). The trial judge did not err in denying Wozniak's motion to suppress the drug screen test because Wozniak presented no evidence that the scientific principles underlying the drug screen were inadmissible under the *Frye* test. The State presented sufficient evidence to convict Wozniak of driving with a proscribed drug or its metabolite in his body, and A.R.S. § 13–901.01 did not entitle him to probation.

CONCURRING: CECIL B. PATTERSON, JR., Presiding Judge, NOEL FIDEL, Judge.