[No. A109302. First Dist., Div. Five. Oct. 24, 2005.]

In re LEON S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LEON S., Defendant and Appellant.

## Counsel

Mikol Benjacob for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert A. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STEVENS, J.**—Appellant Leon S. was found to have trespassed on school property after he had been suspended from school, in violation of Penal Code section 626.2. He was continued on probation. Appellant raises two contentions in this appeal: (1) there was insufficient evidence that he was sent a notice of suspension by certified or registered mail; and (2) he did not receive a proper hearing before he was suspended. We agree with the first contention, and therefore we need not reach the second.

### I. *FACTS AND PROCEDURAL HISTORY*

On December 7, 2004, high school assistant principal Tad Scott (Scott) suspended appellant, a student, for a period of three days, for disruptive

behavior. According to Scott, appellant was disruptive, uncooperative, and cursing. Appellant also "brushed" up against Scott during a confrontation in his office. As a result, Scott advised appellant that his suspension, which was initially proposed for two days, would be increased to three days. In Scott's office, appellant signed a suspension form dated December 7. The form, placed into evidence as exhibit A, stated the reasons for the suspension, and warned appellant that he could not enter the school or adjacent street during the suspension, which ended on December 10. Scott went over the form with appellant, reading it to him, and appellant signed it.

Scott testified that his usual procedure was to hand one copy of the suspension form to the suspended student, and then to have his secretary mail a second copy to his home. Scott testified that he believed a copy of the form was mailed by his secretary to appellant's mother: "This suspension form was sent to mom." However, he relied on his secretary to mail the suspension form, because this was part of the secretary's job duties: "Q. Did you not personally put it in the mail? [¶] A. No, I don't do that. My secretary does that."

Scott also telephoned appellant's mother on December 7, informing her that appellant had been suspended for three days. During their conversation, appellant's mother gave permission for appellant to leave school on his own, without requiring her to pick him up.

Two days later, on December 9, 2004, high school campus supervisor Marisable Jimenez (Jimenez) saw appellant on campus. When asked by Jimenez what he was doing there, appellant said he was unsure if he was still on suspension. Appellant accompanied Jimenez to the school office, where she ascertained that he was on the school's list of suspended students. Jimenez showed appellant the list. When appellant told Jimenez that he thought he was supposed to come back to school, Jimenez told him to check with the secretary. Appellant stated he would check with Scott, and he went into Scott's office. When he came out of the office, appellant said, "I guess I'm suspended." Jimenez then advised appellant to call his mother.

Tyrone Tyler, another campus supervisor, also saw appellant on campus on December 9. Tyler checked, and discovered appellant was on suspension. About an hour after he first saw appellant, Tyler noticed that appellant was in the campus attendance office. He was yelling at the clerks, telling them to call his mother. Tyler told appellant that he was on suspension and had to leave the campus immediately. Appellant refused. According to Jimenez, appellant told Tyler that he had called his mother and that she was coming to pick him

up. The police were summoned, and they also asked appellant to leave the campus. He again refused. Tyler described appellant as acting belligerent.

According to appellant's mother, A.R., Scott telephoned her on December 7 and advised her that appellant had been suspended for two days. A.R. received nothing in the mail "before December 9th" informing her that the suspension was for a longer period. A.R. took her son to school on December 9, believing his suspension was over. Later that day, school officials called to inform her that appellant had been arrested for trespassing at school.

Appellant acknowledged that he signed the suspension form on December 7, which showed that he had been suspended for three days or until December 10. However, he claimed he did not read the form, and that Scott had instead told him the suspension was for two days. Appellant denied receiving a copy of the suspension form. He also denied that Scott told him his suspension, originally set at two days, would be changed to three days based upon his behavior in Scott's office. Contrary to Scott's testimony, appellant denied threatening Scott, and denied making gang signs.

On rebuttal, Scott explained that on December 7 there was an initial incident in which appellant was abusive. Appellant became upset and defiant. Scott advised appellant he would be suspended for two days, if he could not control his behavior. After appellant complained that Scott could not do that, Scott replied that the suspension would be increased to three days if appellant did not follow his orders.

Scott ordered appellant to come into his office where they went over the paperwork that showed appellant had been suspended for three days. Scott explained that the suspension had been increased from two to three days because of appellant's continued defiance. Scott did not personally give appellant a copy of the suspension papers, as it was his secretary's duty to give the suspended student a copy of the papers and to mail a copy to his residence. Scott instructed appellant to wait by a flagpole while copies of the suspension papers were prepared. Appellant refused.

Scott also offered additional testimony regarding his telephone conversation with A.R.: "Q. And did you call [A.R.] while [Leon S.] was in your office after you had gone over the suspension papers? [¶] A. Yes. She asked me to send him home. [¶] Q. Did you tell her that you were going to suspend him for two days or three days, do you recall? [¶] A. I believe I said three days. [¶] Q. That was based on the suspension papers which were sitting in front of you when you called? [¶] A. That's correct."

An amended juvenile petition (Welf. & Inst. Code, § 602) was filed on December 10, 2004, charging appellant with threatening a public officer (Pen. Code, § 71; count V), trespassing on school grounds (Pen. Code, § 626.2; count VI), and disturbing the peace of a school (Pen. Code, § 415.5, subd. (a); count VII).

On January 3, 2005, after a contested jurisdictional hearing, only count VI was sustained, count VII was dismissed, and count V was not sustained. Appellant was continued as a ward of the court on probation.

## II.  DISCUSSION

Appellant's primary contention on appeal is that the evidence is insufficient to sustain the juvenile court's finding of trespassing on school grounds. Appellant maintains there is insufficient evidence showing that *written notice* of the suspension was *served by registered or certified mail* at his last address.

### A.  Standard of Review

The test to determine a claim of insufficient evidence is whether, on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576–577 [162 Cal.Rptr. 431, 606 P.2d 738] (*Johnson*); *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) In making this determination, the appellate court " 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] . . . '[O]ur task . . . is twofold. First, we must resolve the issue in the light of the *whole record*. . . . Second, we must judge whether the evidence of each of the essential elements . . . is *substantial*. . . .' " (*Johnson, supra*, at pp. 576–577, italics in original; see also *In re Roderick P.* (1972) 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1].)

### B.  The Applicable Law

Penal Code section 626.2 reads in relevant part: "Every student or employee who, after a hearing, has been suspended or dismissed from a community college, a state university, the university, or a school for disrupting the orderly operation of the campus or facility of such institution, and as a condition of such suspension or dismissal has been denied access to the campus or facility, or both, of the institution for the period of the suspension

or in the case of dismissal for a period not to exceed one year; *who has been served by registered or certified mail, at the last address given by such person, with a written notice of such suspension or dismissal and condition*; and who willfully and knowingly enters upon the campus or facility of the institution to which he or she has been denied access, without the express written permission of the chief administrative officer of the campus or facility, is guilty of a misdemeanor . . . ." (Italics added.)

### C.  *Sufficient Evidence Regarding Service*

As to the requirement of mailing the notice by registered or certified mail, we summarize and quote the relevant evidence on this topic. Scott's usual practice was to have his secretary mail a copy of the suspension notice to the suspended student's home. Although Scott testified, "[t]his suspension form was sent to mom," it was clear from his testimony that he relied on his secretary to mail the notice, because this was apparently one of her duties as his secretary: "Did you not personally put it in the mail? [¶] A. No, I don't do that. My secretary does that."

Appellant's mother denied receiving any suspension form that explained that her son had been suspended for more than two days before she returned him to school on December 9. A.R. testified she had been told by Scott that the suspension was for two days, not three, so she brought her son back to school after two days.

Appellant argues that the clear and unambiguous language of the statute requires, as an element of the offense, that a written notice be "served by registered or certified mail" at the suspended student's last given address. Interpreting the statute otherwise, according to appellant, "substitute[s] [the court's] judgment for the intent of the [L]egislature, in direct contravention to the plain wording of [Penal Code] section 626.2."

■   We accept appellant's legal argument on this point. The plain language of the governing statute requires that the notice of suspension must be served on the accused by "registered or certified mail," and we are not authorized to relax this statutory requirement, which the Legislature has explicitly included as an element of the offense. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)   ■   Our role in construing any statute is simply to ascertain the Legislature's intent and effectuate the purpose of the law. Generally, we accomplish this task by giving the statutory words their usual, ordinary meanings. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14

Cal.Rptr.3d 1, 90 P.3d 1168].) " 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on [its] face . . . or from its legislative history.' " (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) Under Penal Code section 626.2, the People were required to present evidence that the notice of suspension was served by mailing to appellant's last known address, by certified or registered mail.

There is no substantial evidence that the notice of suspension was served by certified or registered mail, as the statute requires. The record evidence contains no mention whatsoever of any such service by certified or registered mail. There is some weak evidence of a mailing, although not that the suspension notice was sent by certified or registered mail. At best, there is evidence that Scott relied upon his secretary to mail the notice, and that he believed she had done so in this instance.

The Attorney General argues that the statutory presumption of performance of official duty creates a presumption of compliance with the statutory requirements, absent some proof to the contrary. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed. . . ."]; see *Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1172 [97 Cal.Rptr.2d 451].)

Appellant however maintains that the statutory presumption of performance of official duty does not apply to the secretary of the assistant principal of a high school and, in any event, any such presumption was rebutted by contrary evidence of a lack of mailing. We need not answer the question of whether Scott or other school officials might delegate this duty of certified or registered mailing to a secretary, since Scott never testified that it was his secretary's custom or practice to serve suspension notices by certified or registered mail. Even if we were to assume that a presumption initially applied, it was overcome by specific evidence to the contrary—A.R.'s testimony that she did not receive any such notice in the mail before she returned her son to the school on December 9th, believing his suspension was over. Given the state of the evidence, the People would be required to produce more specific evidence of a certified or registered mailing. Here, the prosecution offered no testimony from Scott's secretary or documentary evidence in the form of a receipt of mailing. We are left only with a total absence of evidence that the suspension notice was served by certified or registered mail.

As there was insufficient evidence of service of the notice of suspension by certified or registered mail, as the statute requires, we must reverse the trial court's order finding the charge to be true.[1] (See *Johnson, supra,* 26 Cal.3d at pp. 576–577.)

### III. *DISPOSITION*

The order of the juvenile court is reversed.

Gemello, J., and Jones, P. J., concurred.

---

[1] In light of this conclusion, we need not address appellant's arguments that he was not afforded a proper hearing before his suspension.