[No. S109537. May 27, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHELLE ELAINE CANTY, Defendant and Appellant.

**COUNSEL**

Sandra Gillies, Bradley A. Bristow, under appointments by the Supreme Court, and Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Carlos A. Martinez, Marc J. Nolan, Janet E. Neeley and Tiffany S. Shultz, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

GEORGE, C. J.— ■  Following the enactment of Proposition 36, the "Substance Abuse and Crime Prevention Act of 2000," which took effect July 1, 2001, a defendant who has been convicted of a "nonviolent drug possession offense" must receive probation and diversion into a drug treatment program, and may not be sentenced to incarceration as an additional

term of probation. (Pen. Code, § 1210.1, subd. (a).)[1] ▆ A defendant is *ineligible* for probation and diversion to such a program, however, if he or she has been "convicted in the same proceeding of a misdemeanor not related to the use of drugs or any felony." (Pen. Code, § 1210.1, subd. (b)(2).)[2] An offense is defined as one "not related to the use of drugs" if it does not involve the defendant's "simple possession or use" of drugs or drug paraphernalia, presence where drugs are being used, or failure to register as a drug offender, or any similar activity. (§ 1210, subd. (d).)

The issue in the present case is whether defendant, who was convicted of transporting a controlled substance (methamphetamine), a felony, together with driving a vehicle while under the influence of a controlled substance, a misdemeanor, has been "convicted in the same proceeding of a misdemeanor not related to the use of drugs," within the meaning of section 1210.1, subdivision (b)(2) and section 1210, subdivision (d). We conclude that the misdemeanor of driving a vehicle while under the influence of a controlled substance is "a misdemeanor not related to the use of drugs" within the meaning of those provisions, and that therefore section 1210.1, subdivision (a) is inapplicable to defendant. Accordingly, we affirm the judgment of the Court of Appeal upholding the trial court's determination that defendant was not entitled to probation and drug treatment diversion under Proposition 36.

I

At approximately 10:40 p.m. on March 17, 2001, a police officer observed a person driving a vehicle (with two passengers) down the center of a road, straddling the center divider, for approximately one block. The officer, suspecting the driver was under the influence of drugs or alcohol, made a traffic stop.

The driver, defendant Michelle Elaine Canty, appeared to be under the influence of alcohol or drugs, and admitted to the officer that she had ingested methamphetamine, which she also had provided to her two passengers, earlier that evening. The officer conducted a search, discovered that defendant possessed two grams of methamphetamine, and arrested her. Later tests confirmed she was under the influence of methamphetamine.

Defendant was charged with several felonies, including transportation, possession for sale, and being under the influence of methamphetamine, as

---

[1] Proposition 36 is codified in Penal Code sections 1210, 1210.1, and 3063.1 and Health and Safety Code section 11999.4 et seq. (*People v. Superior Court (Jefferson)* (2002) 97 Cal.App.4th 530, 535 [118 Cal.Rptr.2d 529].)

[2] All further undesignated section references are to the Penal Code.

well as several misdemeanors, including driving while under the influence of alcohol and a drug. It further was alleged that defendant had served a prison term in 1996 for possession of methamphetamine.

On June 19, 2001, defendant pleaded guilty to transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), a felony, and to driving a vehicle while under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a)), a misdemeanor. The remaining charges were dismissed.

Subsequently, Proposition 36 having become effective on July 1, 2001, the trial court referred the matter to the probation department to determine whether, pursuant to section 1210.1, subdivision (a), defendant was entitled to probation and diversion to a drug treatment program. The probation report, noting that defendant had suffered several prior convictions, recommended that she not be granted probation under Proposition 36 or any other provision, and that she serve a term in state prison for the felony drug conviction.

Defendant and her mother both submitted written requests that the trial court order that defendant receive drug treatment. Defendant's letter explained that she previously had attended a drug treatment program that had enabled her to "stay clean" for more than two years, and that she had resumed drug use only recently.

On August 7, 2001, at the sentencing hearing, the trial court denied defendant's request to be placed on probation and be diverted to a drug treatment program. The trial court determined that defendant was ineligible both because her convictions preceded the effective date of section 1210.1 and because her conviction for driving while under the influence was a "misdemeanor not related to the use of drugs" within the meaning of section 1210.1, subdivision (b)(2).

The trial court imposed and suspended execution of a sentence of two years in state prison for defendant's conviction of transporting methamphetamine, placed her on five years' formal probation requiring service of 90 days in county jail, and ordered her to pay restitution and to register as a controlled substance offender. The trial court also imposed a term of six months in county jail for defendant's conviction of driving a vehicle while under the influence of drugs. Defendant timely filed a notice of reasonable grounds for an appeal based upon the sentence she received, and the trial court issued a certificate of probable cause (§ 1237.5).

The Court of Appeal accepted a concession by the Attorney General that the circumstance of defendant's offenses having predated the enactment of Proposition 36 did not render that measure inapplicable. The appellate court

affirmed the trial court's ruling that defendant was not entitled to be sentenced under the provisions of Proposition 36, concluding that defendant's conviction for driving while under the influence of drugs was a "misdemeanor not related to the use of drugs" within the meaning of section 1210.1, subdivision (b)(2), and thus precluded probation and diversion to a drug treatment program. We granted defendant's petition for review.

## II

Proposition 36 mandates probation and diversion to a drug treatment program for those offenders whose illegal conduct is confined to using, possessing, or transporting a controlled substance. Its provisions outline "an alternative sentencing scheme" for persons convicted of certain drug offenses. (*In re Varnell* (2003) 30 Cal.4th 1132, 1136 [135 Cal.Rptr.2d 619, 70 P.3d 1037] (*Varnell*).) "In effect, it acts as an exception to the punishment" provided for certain offenses involving controlled substances. (*Ibid.*)

Section 1210.1, subdivision (a) provides in relevant part that subject to the exceptions set forth, "any person convicted of a nonviolent drug possession offense shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program." Section 1210, subdivision (a) defines a "drug possession offense," as used in section 1210.1, as "the unlawful personal use, possession for personal use, or transportation for personal use of any controlled substance identified in Section 11054, 11055, 11056, 11057 or 11058 of the Health and Safety Code, or the offense of being under the influence of a controlled substance in violation of Section 11550 of the Health and Safety Code. The term 'nonviolent drug possession offense' does not include the possession for sale, production, or manufacturing of any controlled substance and does not include violations of Section 4573.6 or 4573.8." (As amended Stats. 2003, ch. 155, § 1.)

Section 1210.1, subdivision (b) describes those defendants who are disqualified from receiving mandatory probation and diversion pursuant to section 1210.1, subdivision (a). Section 1210.1, subdivision (b)(1) generally disqualifies persons previously convicted of serious or violent felonies. Section 1210.1, subdivision (b)(2) disqualifies "[a]ny defendant who, in addition to one or more nonviolent drug possession offenses, has been *convicted in the same proceeding of a misdemeanor not related to the use of drugs* or any felony." (Italics added.) Section 1210, subdivision (d) defines the term "misdemeanor not related to the use of drugs" as "a misdemeanor that does not involve (1) the simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or (2) *any activity similar to those listed in paragraph (1).*" (Italics added.)

Defendant contends that misdemeanor driving while under the influence of drugs constitutes an activity *similar to* "simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender," and therefore falls within the category of offenses that, as described in section 1210, subdivision (d)(2), do not disqualify a defendant from receiving probation and diversion to a drug treatment program in lieu of traditional punishment. Defendant observes that misdemeanor driving while under the influence of drugs is not similar to those offenses (such as selling or distributing drugs) listed in section 1210, subdivision (a)—offenses that are not considered to be among the "nonviolent drug possession offense[s]" that entitle a defendant to such probation and diversion.

## A

In interpreting a voter initiative such as Proposition 36, we apply the same principles that govern the construction of a statute. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d 951]; *People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27] (*Rizo*); see *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927]; *People v. Superior Court* (*Jefferson*), *supra*, 97 Cal.App.4th 530, 536.) " 'Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.]' " (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166] (*Curle*); *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420] (*Pieters*).)

Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning. (*Curle, supra*, 24 Cal.4th at p. 1063; *Rizo, supra*, 22 Cal.4th at p. 685.) If the language is clear and unambiguous, we follow the plain meaning of the measure. (*Curle, supra*, 24 Cal.4th at p. 1063; *People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912] (*Birkett*); *People v. Broussard* (1993) 5 Cal.4th 1067, 1071–1072 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] (*Deukmejian*).)

The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]" (*Curle, supra*, 24 Cal.4th 1057, 1063; *Horwich v. Superior Court, supra*, 21 Cal.4th at p. 276; *Pieters, supra*, 52 Cal.3d at p. 899.) The intent of

the law prevails over the letter of the law, and " 'the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.]" (*Pieters, supra,* at p. 899.)

"If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts." (*Curle, supra,* 24 Cal.4th 1057, 1063.) As noted, section 1210, subdivision (d) defines the term "misdemeanor not related to the use of drugs" as a misdemeanor not involving (1) simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or (2) "any activity *similar to*" those activities. (Italics added.) The statute does not provide a further definition of the second category, and its boundaries are not self-evident. That part of the definition appears to admit of more than one reasonable interpretation.

■ We therefore apply the principles that pertain where statutory ambiguity exists, adopting the interpretation that leads to a more reasonable result. (*Deukmejian, supra,* 45 Cal.3d 727, 735.) It is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the history and background of the provision, in an attempt to ascertain the most reasonable interpretation. (*Birkett, supra,* 21 Cal.4th 226, 231–232; *Delaney v. Baker* (1999) 20 Cal.4th 23, 29–30 [82 Cal.Rptr.2d 610, 971 P.2d 986].)

We also consider that, under the traditional "rule of lenity," language in a penal statute that truly is susceptible of more than one reasonable construction in meaning or application ordinarily is construed in the manner that is more favorable to the defendant. (*People v. Avery* (2002) 27 Cal.4th 49, 57–58 [115 Cal.Rptr.2d 403, 38 P.3d 1].) Nonetheless, " 'the rule of lenity applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' . . . 'The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' [¶] Thus, although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." (*People v. Avery, supra,* 27 Cal.4th at pp. 57–58; see also *People v. Floyd* (2003) 31 Cal.4th 179, 188 [1 Cal.Rptr.3d 885, 72 P.3d 820]; *People v. Farell* (2002) 28 Cal.4th 381, 394–395 [121 Cal.Rptr.2d 603, 48 P.3d 1155]; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 24, pp. 51–53; *id.* (2003 supp.) § 24, p. 13.)

B

1

Defendant points out that "being under the influence of drugs" in violation of Health and Safety Code section 11550 constitutes a "nonviolent drug possession offense" pursuant to section 1210, subdivision (a). She urges that the misdemeanor of *driving* while under the influence of drugs should be equated with that of *being* under the influence of drugs or of possessing drugs. Defendant reasons that the use of drugs is integral to each offense.

In response to the observation of the Court of Appeal that the driving offense involves public safety, whereas simple use or possession does not, defendant asserts that the presence of a risk to public safety is not the feature that separates qualifying from nonqualifying offenses. Defendant urges that a person may be found guilty of driving while under the influence of drugs despite having driven a minimal distance and not having exposed others to actual danger. A person may be convicted of certain other offenses, such as transportation of drugs, and still receive diversion under section 1210.1, even though these latter offenses actually pose a greater danger to the public than driving while under the influence of drugs.

■ We cannot agree with defendant's equation of the two offenses, for several reasons. As an initial matter, the offenses of being under the influence of drugs and driving while under the influence of drugs differ significantly in the level or degree of impairment required for conviction. ■ One may be guilty of *being* under the influence of drugs in violation of Health and Safety Code section 11550 by being in that state in any detectable manner: " 'The symptoms of being under the influence within the meaning of that statute are not confined to those commensurate with misbehavior, nor to those which demonstrate impairment of physical or mental ability.' " (*People v. Enriquez* (1996) 42 Cal.App.4th 661, 665 [49 Cal.Rptr.2d 710], citing *Byrd v. Municipal Court* (1981) 125 Cal.App.3d 1054, 1058 [178 Cal.Rptr. 480]; *Gilbert v. Municipal* Court (1977) 73 Cal.App.3d 723, 727 [140 Cal.Rptr. 897].)

■ By contrast, for a defendant to be guilty of *driving* while under the influence of drugs in violation of Vehicle Code section 23152, subdivision (a), " 'the . . . drug(s) must have so far affected the nervous system, the brain, or muscles [of the individual] as to impair to an appreciable degree *the ability to operate a vehicle* in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties. [Citations.]' " (*People v. Enriquez, supra,* 42 Cal.App.4th at p. 665; see also *Gilbert v. Municipal Court, supra,* 73 Cal.App.3d at p. 727; Veh. Code, § 312.) Driving while

under the influence of drugs involves a greater impairment of an individual's faculties, and in that respect is not "similar" to being merely under the influence of drugs.

Second, the conduct that is the central focus of each statute is not similar. The permissible drug-related misdemeanors described in section 1210, subdivision (d)(1)—simple possession or use of drugs or drug paraphernalia, presence where drugs are used, or failure to register as a drug offender—share an emphasis on the individual offender's own private involvement with the proscribed substance. By contrast, the driving-while-under-the-influence misdemeanor described in Vehicle Code section 23152 primarily is concerned not with the offender's use of the proscribed substance, but with his or her use of a motor vehicle. (See *Byrd v. Municipal Court, supra,* 125 Cal.App.3d 1054, 1058; *People v. Davalos* (1987) 192 Cal.App.3d Supp. 10, 14 [238 Cal.Rptr. 50].) The gravamen of driving while under the influence is *driving* despite an impairment of capacity. (See *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 349 [211 Cal.Rptr. 742, 696 P.2d 134]; *People v. Goldberg* (2003) 105 Cal.App.4th 1202, 1210 [130 Cal.Rptr.2d 192]; *Gilbert v. Municipal Court, supra,* 73 Cal.App.3d at p. 727.) That offense concerns the driver's activity as it actually or potentially affects or "transacts" with other persons. In this respect, it is more similar to the "commercial" drug offenses that expressly disqualify a defendant from receiving diversion. (§ 1210, subd. (a).)

Third, as a related point, the interest that society seeks to protect by criminalizing each activity is not identical. In proscribing "*being* under the influence," the statute's legislative purpose primarily is to *protect the user* from the consequences—such as addiction to the substance used—of his or her own conduct. (See *Bosco v. Justice Court* (1978) 77 Cal.App.3d 179, 186–188 [143 Cal.Rptr. 468].) In proscribing *driving* while under the influence, the statute's legislative purpose is to *protect the public* and guard against the threat of injury to others. (*People v. Goldberg, supra,* 105 Cal.App.4th at p. 1210; *People v. Malvitz* (1992) 11 Cal.App.4th Supp. 9, 14 [14 Cal.Rptr.2d 698]; *People v. Davalos, supra,* 192 Cal.App.3d Supp. 10, 14; see *Burg v. Municipal Court* (1983) 35 Cal.3d 257, 262 [198 Cal.Rptr. 145, 673 P.2d 732]; *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 899 [157 Cal.Rptr. 693, 598 P.2d 854].) That broad purpose reflects the wider adverse social effects of the prohibited driving activity.

Our comparative analysis of these provisions leads us to conclude, in construing the statutory definition of the term "misdemeanor not related to the use of drugs" as an offense other than those set forth in section 1210, subdivision (d), that the misdemeanor of driving while under the influence is

not an activity similar to those misdemeanors involving the simple possession, use, or presence at the use of drugs, or the failure to register one's status as a drug offender.

### 2

■ Because the most reasonable interpretation of a provision may be reflected, in part, by evidence of the enacting body's intent beyond the statutory language itself, in its history and background (*Birkett, supra,* 21 Cal.4th 226, 231–232), we also consider the measure as presented to the voters with any uncodified findings and statements of intent. In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration. (See *People v. Allen* (1999) 21 Cal.4th 846, 860–861 [89 Cal.Rptr.2d 279, 984 P.2d 486]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118–1119 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Although such statements in an uncodified section do not confer power, determine rights, or enlarge the scope of a measure, they properly may be utilized as an aid in construing a statute. (See *People v. Allen, supra,* 21 Cal.4th at pp. 860–861; 1A Sutherland, Statutory Construction (6th ed. 2002) § 20.03, p. 123.)

In approving the "Drugs, Probation and Treatment Program" initiative on November 7, 2000, the electorate adopted uncodified findings and declarations that treatment for substance abuse is "a proven public safety and health measure," and that a similar proposition had been endorsed by voters in Arizona with proven success in enhancing public safety.[3] In addition, the electorate expressed the purpose and intent to divert nonviolent defendants charged with "simple drug possession and drug use offenses" from incarceration into community-based substance abuse treatment programs, to halt the expenditure of hundreds of millions of dollars to incarcerate and re-incarcerate "nonviolent drug users" better served by community-based treatment, to enhance public safety by reducing drug-related crime and reserving

---

[3] In Proposition 36, section 2, the findings and declarations provide in part: "[¶] (a) Substance abuse treatment is a proven public safety and health measure. Nonviolent, drug-dependent criminal offenders who receive drug treatment are much less likely to abuse drugs and commit future crimes, and are likelier to live healthier, more stable and more productive lives. [¶] (b) Community safety and health are promoted, and taxpayer dollars are saved, when nonviolent persons convicted of drug possession or drug use are provided appropriate community-based treatment instead of incarceration. [¶] (c) In 1996, Arizona voters . . . passed the Drug Medicalization, Prevention, and Control Act, which diverted nonviolent drug offenders into drug treatment and education services rather than incarceration . . . . [The Act] is 'resulting in safer communities and more substance abusing probationers in recovery,' has already saved state taxpayers millions of dollars, and is helping more than 75 percent of program participants to remain drug free." (See Historical and Statutory Notes, 51 West's Ann. Pen. Code (2004 supp.) foll. § 1210, p. 249.)

jails and prisons for serious and violent offenders, and to improve public health by treatment of drug abuse and dependence through proven and effective drug treatment strategies. (Prop. 36, § 3, subds. (a)–(c); see Historical and Statutory Notes, 51 West's Ann. Pen. Code, *supra*, foll. § 1210, p. 249.)

■ The purpose and intent expressed in the preamble to these statutes tends to reinforce the conclusion that misdemeanor driving while under the influence of drugs is *not* an activity similar to the conduct that underlies those misdemeanors that merely involve personal interaction with drugs, described in section 1210, subdivision (d). As explained more fully below, the statutes that prohibit driving while under the influence of drugs contemplate graduated levels of incarceration as well as other restrictions, such as suspension or revocation of a driver's license, and thus do not appear to be "simple" offenses for purposes of the probation and diversion statutes.

In construing these statutes, we also may refer to "other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet. [Citation.]" (*Rizo, supra*, 22 Cal.4th 681, 685; *Birkett, supra*, 21 Cal.4th 226, 243.) Within the ballot summary, argument, and analysis distributed to voters for the November 7, 2000, General Election, the proponents of Proposition 36 stated that the measure was "strictly limited" and "only affects simple drug possession. *No other criminal laws are changed.*" (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26, italics added.)[4] Individuals " 'previously convicted of violent or serious felonies . . . *will not be eligible* for the treatment program unless they've served their time and have committed no felony crimes for five years. If convicted of a non-drug crime along with drug possession, they're *not eligible.* If they're convicted of selling drugs, they're *not eligible.*' (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26, italics added; see also *id.*, analysis of Prop. 36 by Legis. Analyst, pp. 23–24.)" (*Varnell, supra*, 30 Cal.4th at p. 1144, italics added in *Varnell*.)[5]

---

[4] The Attorney General has requested that we take judicial notice of that portion of the California General Election Pamphlet prepared for the November 7, 2000 election pertaining to Proposition 36, including the ballot measure summary, analysis by the legislative analyst, arguments pro and con, and the text of the proposed law. We grant this request. (See *Varnell, supra*, 30 Cal.4th 1132, 1144, fn. 7; *People v. Superior Court (Turner)* (2002) 97 Cal.App.4th 1222, 1230, fn. 4 [119 Cal.Rptr.2d 170].)

[5] The Attorney General's ballot measure summary described the initiative as "[r]equir[ing] probation and drug treatment program, not incarceration, for conviction of possession, use, transportation for personal use or being under [the] influence of controlled substances and similar parole violations, not including sale or manufacture. [¶] Permits additional probation conditions except incarceration." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) Official Title and Summary of Prop. 36, p. 22.) The Legislative Analyst's analysis of Proposition 36 informed the voters: "The measure defines a nonviolent drug possession offense as a felony or

In view of the express advice given the voters that Proposition 36 was strictly limited—affecting "only simple drug possession," and changing "[n]o other criminal laws" (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26)—we must assume that the voters did not intend to amend other criminal statutes. If we were to interpret section 1210.1, subdivision (b)(2) not to preclude a defendant convicted of misdemeanor driving while under the influence of drugs from receiving probation and drug treatment under section 1210.1, subdivision (a), however, such a change in a statutory scheme would result.

At present, the Vehicle Code imposes increasingly harsh punishments on those drivers who reoffend in violation of its provisions. Those statutes impose a 96-hour jail term for a first conviction (Veh. Code, § 23536, subd. (a)), a 90-day jail term for a second conviction within seven years (Veh. Code, § 23540), a 120-day jail term for a third conviction within seven years (Veh. Code, § 23546), and a term of not less than 180 days in jail (or a term in state prison) for a fourth conviction within seven years (Veh. Code, § 23550; see *People v. Casillas* (2001) 92 Cal.App.4th 171, 175 [111 Cal.Rptr.2d 651]; *People v. Davalos, supra*, 192 Cal.App.3d Supp. 10, 13–14).

Pursuant to Proposition 36 (§ 1210.1, subd. (d)(1)), if the court finds that a defendant has completed an appropriate drug treatment program, the court "shall" expunge the conviction from the defendant's record. Thus, such a defendant's subsequent conviction of misdemeanor driving while under the influence of drugs would be treated as a first offense. That result would be contrary to the evident intent of the Vehicle Code—which clearly is to *increase*, with each new violation, the punishment for driving while under the influence of drugs.[6]

---

misdemeanor criminal charge for being under the influence of illegal drugs or for possessing, using, or transporting illegal drugs for personal use. The definition excludes cases involving possession for sale, producing, or manufacturing of illegal drugs. [¶] . . . [¶] . . . This measure specifies that certain offenders would be excluded from its provisions and thus could be sentenced by a court to a state prison, county jail, or probation without drug treatment. . . . This measure also excludes offenders convicted in the same court proceeding of a misdemeanor unrelated to drug use or any felony other than a nonviolent drug possession offense. . . ." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) analysis of Prop. 36 by Legis. Analyst, p. 23.)

[6] In her reply brief, defendant asserts that interpreting section 1210.1, subdivision (b)(2) not to exclude a defendant convicted of misdemeanor driving while under the influence of drugs from receiving probation and drug treatment pursuant to section 1210.1, subdivision (a), would not affect the Vehicle Code's design of increasing the punishment for recidivist offenders. Defendant reasons that in the event a defendant completes drug treatment, section 1210.1, subdivision (d)(1) requires dismissal solely of "the charge upon which the Proposition 36 probation was granted," and *not* the conviction of driving while under the influence of drugs. Thus, a subsequent conviction of driving while under the influence of drugs would be appropriately punished as a subsequent offense.

Further, that result would be inconsistent with the design of the relevant Vehicle Code provisions to punish impaired drivers identically, whether they drive while under the influence of alcohol or drugs. As the Court of Appeal observed, Vehicle Code section 23152 does not make any distinction between a driver impaired by alcohol and a driver impaired by drugs. That section is part of a comprehensive statutory scheme encompassing *both* "driving-while-under-the-influence" treatment programs and mandatory incarceration. (See Veh. Code, § 23536 et seq.) An interpretation of section 1210.1, subdivision (b)(2) permitting a defendant convicted of misdemeanor driving while under the influence of drugs to receive probation and drug treatment under section 1210.1, subdivision (a), would afford drivers impaired by drugs more lenient treatment than that afforded drivers impaired by alcohol.

Although defendant suggests that such inconsistent treatment is justified because one who drives under the influence of alcohol has not ingested an illegal substance and has a much greater opportunity to participate in appropriate treatment programs, the fact remains that such an interpretation of the probation and diversion measures would work a modification of the statutes proscribing driving while under the influence, contrary to the representations made to the voters in the official ballot pamphlet.

---

The relevant provisions do not support that view. As amended effective October 11, 2001, section 1210.1, subdivision (a) provides in part: "*Notwithstanding any other provision of law*, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense *shall receive probation*," conditioned upon "participation in and completion of an appropriate drug treatment program . . . . A court *may not impose incarceration* as an additional condition of probation. Probation shall be imposed by *suspending the imposition* of sentence." As we have discussed (*ante*, at p. 1275), subdivision (b)(2) disqualifies a defendant who, in addition to a nonviolent drug possession offense, "has been *convicted in the same proceeding* of a misdemeanor not related to the use of drugs." Subdivision (d)(1) provides in part that "[a]t any time after completion of drug treatment, a defendant may petition the sentencing court for dismissal of the charges. If the court finds that the defendant successfully completed drug treatment, . . . *the conviction on which the probation was based* shall be set aside and the court shall dismiss *the indictment, complaint, or information* against the defendant. In addition . . . *both the arrest and the conviction* shall be deemed never to have occurred." (Italics added.) Subdivision (e) provides for proceedings to continue or revoke the probation mandated by subdivision (a) when a defendant violates that probation by committing *either* a new nonviolent drug possession offense, *or* a new misdemeanor involving simple possession or use of drugs or paraphernalia, presence where drugs are used, failure to register, or *similar activity* (§ 1210, subd. (d)).

Considered as a whole, the provisions require probation for a conviction in the same proceeding of a nonviolent drug possession offense and a drug-related misdemeanor. The provisions also require that, following a defendant's completion of drug treatment, the conviction itself, rather than a particular charge, will be dismissed, and, together with the arrest, will be deemed never to have occurred. Were we to conclude that a conviction of misdemeanor driving while under the influence of drugs does not preclude eligibility for probation and drug treatment under section 1210.1, subdivision (a), such a disposition would preclude the subsequent use of that misdemeanor to determine the appropriate punishment upon a new violation of the Vehicle Code.

3

We also briefly examine the Arizona statute (Ariz. Rev. Stat., § 13-901.01) that had its source in an initiative endorsed by the Arizona voters (Proposition 200), which became the model for California's similar initiative measure. (See, *ante*, at p. 1280, fn. 3.) The purpose of the Arizona statute is to divert nonviolent drug users and possessors to drug treatment programs and reserve prison for drug dealers and violent offenders. (*State v. Tousignant* (2002) 202 Ariz. 270 [43 P.3d 218, 219]; *State v. Pereyra* (2001) 199 Ariz. 352 [18 P.3d 146, 149].) The Arizona statutory scheme requires that when a defendant is convicted of a nonviolent first-time drug offense, the court must suspend his or her sentence and impose probation, conditioned upon completion of drug treatment. (*State v. Tousignant, supra,* 43 P.3d at p. 219.)

Arizona Revised Statutes section 13-901.01 provides that a person convicted of "personal possession or use of a controlled substance or drug paraphernalia" is eligible to receive probation and treatment. (*Id.,* subd. A.) This statute specifies that "[p]ersonal possession or use of a controlled substance . . . shall not include possession for sale, production, manufacturing or transportation for sale of any controlled substance." (*Id.,* subd. C.) In *Wozniak v. Galati* (2001) 200 Ariz. 550 [30 P.3d 131, 132–134], the court held that a conviction for driving while under the influence of a controlled substance rendered the defendant ineligible for probation and treatment under the statute. The court explained that the plain language applied to "any person who is convicted of the personal possession or use" of drugs, but that the defendant was convicted of violating a statute prohibiting driving while under the influence of an illegal substance. "[The latter statute] does not proscribe personal possession or use; it proscribes driving under certain conditions" and has the element of endangering others. (*Id.* at p. 136; *State v. Pereyra, supra,* 18 P.3d at p. 149 [Prop. 200 differentiates possession of unlawful drugs for personal use from possession for the purpose of commercial trafficking].) The reasoning of the Arizona court applies to the similar statutory scheme before us in the present case.

4

Defendant also observes that in *People v. Duncan* (1990) 216 Cal.App.3d 1621 [265 Cal.Rptr. 612] (*Duncan*), a case examining whether a defendant charged with driving while under the influence of a controlled substance was entitled to pretrial diversion pursuant to section 1000, the court determined that Vehicle Code section 23152, subdivision (a) ". . . as applied to defendant in this case is a drug related offense" (although, significantly, it is not one of the enumerated offenses for which a defendant is entitled to be diverted). (*Duncan* at p. 1627.) Defendant asserts that because legislative terminology

that has been judicially construed presumptively is intended to have the meaning previously determined by the courts (*Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 359 [185 Cal.Rptr. 453, 650 P.2d 328]; *People v. Weidert* (1985) 39 Cal.3d 836, 845–846 [218 Cal.Rptr. 57, 705 P.2d 380]), we should conclude that driving while under the influence of drugs is a drug-related offense for purposes of the provisions that are before us in the present case.

▆ The deferred entry of judgment statutes (§ 1000 et seq.) are in some ways analogous to Proposition 36. (*Varnell, supra,* 30 Cal.4th 1132, 1138.) Pursuant to section 1000, a defendant who has been charged with specified drug offenses and has not committed a crime of violence or threatened violence may undergo a drug education and treatment program in lieu of undergoing a criminal prosecution, and upon satisfactory completion may obtain dismissal of the criminal charges. (30 Cal.4th at pp. 1138–1139.)

▆ As the court explained in *Duncan, supra,* 216 Cal.App.3d 1621, however, section 1000 permits pretrial diversion only as to the specifically enumerated drug offenses, and a violation of Vehicle Code section 23152, subdivision (a) is a drug-related offense that is not listed in section 1000. Thus a defendant who commits that offense is rendered ineligible for pretrial drug diversion under section 1000. (*Duncan,* at p. 1627; *People v. Covarrubias* (1993) 18 Cal.App.4th 639, 641–643 [22 Cal.Rptr.2d 475].) Nothing said by the court in *Duncan* suggests that driving while under the influence of a controlled substance would constitute a drug use or drug possession offense for the purpose of a statutory scheme such as what was subsequently enacted by Proposition 36. As we have discussed, the statutes, voter information, and statutory history of this initiative measure establish that driving while under the influence of drugs is a misdemeanor *not* related to the use of drugs within the meaning of section 1210.1.

▆ Considering the foregoing points individually and collectively, it is evident to us that section 1210, subdivision (d)(2) may not fairly be construed to include the offense of misdemeanor driving while under the influence of drugs as an "activity similar" to the offenses described in section 1210, subdivision (d)(1). Accordingly, a conviction of misdemeanor driving while under the influence of drugs constitutes "a misdemeanor not related to the use of drugs" that, pursuant to section 1210.1, subdivision (b)(2), disqualifies a defendant from receiving the alternative disposition provided in section 1210.1, subdivision (a). Defendant, convicted of transporting a controlled substance and misdemeanor driving while under the influence of drugs in the same proceeding, is not entitled to, and the trial court did not err in denying, the probation and drug treatment provided under Proposition 36.

## III

The judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.