[No. C045860. Third Dist. Mar. 22, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD GEORGE WHEELER, Defendant and Appellant.

874

## Counsel

Rita L. Swenor, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**NICHOLSON, J.**—Pursuant to a negotiated bargain, defendant Richard George Wheeler entered a plea of guilty to issuing or forging a prescription for a narcotic drug in violation of Health and Safety Code section 11368 (section 11368). He appeals the denial of his request for treatment under Proposition 36 (Pen. Code, § 1210 et seq.), contending the trial court erred in ruling his offense was ineligible for such treatment. We conclude forgery of a prescription in violation of section 11368 does not meet the statutory definition of a "nonviolent drug possession offense" as required for treatment under Proposition 36. (Pen. Code, § 1210, subd. (a).) We affirm the judgment.

## BACKGROUND

Identifying himself as "Mark," defendant dropped off a prescription written for "Mark Cooper" by Dr. Tatsuyama for Vicodin with the pharmacy at Longs Drugs.[1] When the pharmacist contacted Dr. Tatsuyama to confirm the authenticity of the prescription, the doctor informed the pharmacist that he did not write the prescription. The pharmacist filled the prescription with calcium pills and reported the incident to law enforcement officers. Defendant picked up the prescription, signing the release log as "Mark Cooper."

When contacted and questioned outside the store by law enforcement officers, defendant initially stated he was picking up the prescription for his friend, Mark Cooper. He admitted signing Cooper's name and claimed Cooper gave him permission to do so. Defendant said he knew Cooper only by name and had no way of contacting him. Cooper always initiated contact.

After he was arrested, defendant admitted he was severely addicted to Vicodin, ingesting up to 90 pills per month, and he "would do almost anything to obtain them (Vicodin pills)." He stated he would obtain pills from several people all over town, including doctors. He said he had an arrangement with Cooper to receive some of the Vicodin pills if he passed Cooper's prescription.

In his statement to the probation department, defendant said "Mark Cooper" was a name he "totally made up." He claimed he first began to take Vicodin 15 years earlier after suffering a lower back injury while working. During this time he also had dental work done for which he was prescribed Vicodin. His addiction led to a significant number of criminal convictions for driving under the influence of drugs, forging prescriptions, and possession of drugs. Just prior to his arrest, defendant was being treated for his back pain by Dr. Tatsuyama. Dr. Tatsuyama prescribed Vicodin, but as defendant continued to ingest Vicodin, his "tolerance went up" and he wanted or needed more of the drug than was prescribed. Defendant used "white out" on one of the prescriptions and made photocopies of the now blank form. He then forged and passed the prescriptions at local pharmacies.

With the exception of outpatient treatment he received while on a grant of drug diversion in 1988, defendant had not received any treatment for his addiction. After his arrest in this case, defendant voluntarily entered outpatient treatment at the Skyway House. Defendant expressed his determination to take control of his life and rid himself of his addiction.

---

[1] Because defendant pled guilty, our statement of facts is taken from the probation officer's report.

Defendant filed a motion seeking treatment pursuant to Proposition 36, arguing the crime of forging and issuing a prescription in violation of section 11368 is a nonviolent drug possession offense within the meaning of Penal Code section 1210, subdivision (a). The trial court denied defendant's motion, denied defendant probation and sentenced him to state prison for the middle term of two years. Counsel stipulated defendant was addicted or in danger of becoming addicted to controlled substances. The court suspended criminal proceedings and committed defendant to the California Rehabilitation Center.

## DISCUSSION

"Proposition 36, the Substance Abuse and Crime Prevention Act of 2000 . . . , was approved by voters on November 7, 2000. [Proposition 36] took effect on July 1, 2001, and is codified at Penal Code sections 1210, 1210.1, 3063.1, and division 10.8 (commencing with § 11999.4) of the Health and Safety Code. Proposition 36 requires the court to grant probation and drug treatment to any defendant convicted of a nonviolent drug possession offense and prohibits incarceration as a condition of probation. (§ 1210.1, subd. (a).)" (*People v. Esparza* (2003) 107 Cal.App.4th 691, 693 [132 Cal.Rptr.2d 377], fn. omitted.) It is "an alternative sentencing scheme for those convicted of certain narcotics offenses. In effect, it acts as an exception to the punishment specified in an individual narcotics offense." (*In re Varnell* (2003) 30 Cal.4th 1132, 1136 [135 Cal.Rptr.2d 619, 70 P.3d 1037].)

Penal Code section 1210, subdivision (a), defines the term "nonviolent drug possession offense" as "the unlawful personal use, possession for personal use, or transportation for personal use of any controlled substance identified in Section 11054, 11055, 11056, 11057 or 11058 of the Health and Safety Code, or the offense of being under the influence of a controlled substance in violation of Section 11550 of the Health and Safety Code." Penal Code section 1210, subdivision (a), excludes from the term "nonviolent drug possession offense" "the possession for sale, production, or manufacturing of any controlled substance . . . ."

In *People v. Sharp* (2003) 112 Cal.App.4th 1336 [5 Cal.Rptr.3d 771], however, this court considered whether the cultivation of marijuana in violation of Health and Safety Code section 11358 was a nonviolent drug possession offense making the defendant eligible for treatment under Proposition 36. In rejecting the contention, *Sharp* first looked to the language of the statute and concluded "cultivation of marijuana is not a nonviolent drug possession offense because the ordinary meaning of 'cultivation' is not 'possession, use, or transportation for personal use,' or 'being under the influence' of a controlled substance." (*People v. Sharp, supra,* at p. 1340.) In fact,

*Sharp* found "cultivation" was not only "missing from the statutory definition," but it fell "within the acts specifically excluded." (*Ibid.*) "Cultivation of marijuana is the production of marijuana." (*Ibid.*) *Sharp* held "Proposition 36 does not apply to a conviction for cultivation of marijuana for personal use." (*People v. Sharp, supra,* at p. 1342.)

■ We start in the same place here, with the language of the statutes, giving the words their ordinary meaning. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168]; *People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].) Of course, the statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme. (*People v. Canty, supra,* at p. 1276.) "The intent of the law prevails over the letter of the law, and ' "the letter will, if possible, be so read to conform to the spirit of the act." [Citation.]' " (*Id.* at pp. 1276–1277.) "When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo, supra,* at p. 685.)

The crime of violating section 11368 is committed by "[1] [e]very person who forges or alters a prescription or [2] who issues or utters an altered prescription, or [3] who issues or utters a prescription bearing a forged or fictitious signature for any narcotic drug, or [4] who obtains any narcotic drug by any forged, fictitious, or altered prescription, or [5] who has in possession any narcotic drug secured by a forged, fictitious, or altered prescription . . . ." Thus, the statute specifies four ways by which a violation may be committed.

In this case the felony complaint charged defendant with a violation of section 11368, alleging he "did unlawfully forge, alter, and issue a prescription bearing a forged and fictitious signature for a narcotic drug, to wit, vicodin." In his written guilty plea defendant admitted he "issued and forged a prescription." By the language of the complaint and defendant's plea, the portions of section 11368 at issue in this case are the first two ways that a violation may be committed. We restrict our scrutiny of the statute to the language relevant to defendant's case.

■ The principal focus of such portions of the statute is on the forgery of a prescription for drugs. "While cases and statutes throughout American jurisdictions abound in definitions [citation], generally speaking forgery is the false making or material alteration of a writing with intent to defraud. [Citations.] In California, 'forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud.' [Citations.]" (*People v. Jack* (1965) 233 Cal.App.2d 446, 452–453 [43 Cal.Rptr. 566].) Thus, the ordinary meaning given to "forgery" in California is related to the making or use of a

counterfeit or fake document, not to the ordinary meaning of "use," "possession," "transportation," or "being under the influence" of a controlled substance. (Pen. Code, § 1210, subd. (a).) Consequently, the forgery of a drug prescription does not facially appear to come within the language used in Penal Code section 1210, subdivision (a) to define the term "nonviolent drug possession offense."[2]

Moreover, nothing in section 11368 establishes the section is limited to offenses committed with the intent to obtain narcotics for personal use. Therefore, section 11368 also does not facially meet the definition of a "nonviolent drug possession offense" for purposes of Proposition 36 because Penal Code section 1210, subdivision (a), expressly limits the term to "personal use," "possession for personal use," "transportation for personal use," or personally "being under the influence."

Defendant argues *his specific* section 11368 offense comes within the broad range of offenses encompassed by Proposition 36 because, in fact, he committed the offense in order to obtain Vicodin for his personal use and "it is not the means by which defendant obtains the controlled substance that controls under Proposition 36, but it is the purpose for which he possesses it."[3] Although we agree Proposition 36 does not distinguish between offenses based on the means by which the drugs are obtained, we are not persuaded this is pertinent to whether defendant's section 11368 offense comes within Proposition 36.

In passing Proposition 36, "the electorate expressed the purpose and intent to divert nonviolent defendants charged with 'simple drug possession and drug use offenses' from incarceration into community-based substance abuse treatment programs, to halt the expenditure of hundreds of millions of dollars to incarcerate and re-incarcerate 'nonviolent drug users' better served by community-based treatment, to enhance public safety by reducing drug-related crime and reserving jails and prisons for serious and violent offenders, and to improve public health by treatment of drug abuse and dependence through proven and effective drug treatment strategies." (*People v. Canty, supra,* 32 Cal.4th at pp. 1280–1281; see *People v. Ferrando, supra,* 115 Cal.App.4th at p. 920.)

---

[2] We agree it also does not fall within the language used in Penal Code section 1210, subdivision (a), i.e., "possession for sale, production, or manufacturing of any controlled substance," to exclude offenses from term "nonviolent drug possession offense." (Compare *People v. Sharp, supra,* 112 Cal.App.4th at p. 1340; *People v. Ferrando* (2004) 115 Cal.App.4th 917, 920 [9 Cal.Rptr.3d 670].)

[3] Defendant never actually possessed Vicodin because the pharmacist determined the prescription defendant presented was a forgery and delivered calcium pills.

The ballot argument in favor of Proposition 36 emphasized the measure was "strictly limited" and "only affects simple drug possession." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26; *People v. Canty, supra,* 32 Cal.4th at p. 1281 [in construing § 1210 these " 'indicia of the voters' intent' " may be considered].)

■ The crime of prescription forgery within the portions of section 11368 at issue is not *simple* drug possession. Although a person could use a forged prescription, as defendant apparently did, as a method for trying to obtain narcotics for personal use, as we pointed out before, the offense is not so limited. In addition, even when the drugs are for personal use, section 11368 is directed at a greater evil than possession and personal use of the obtained drugs. It is primarily directed at forgery of the indicia of a powerful authority solely reserved to statutorily defined "practitioners." (Health & Saf. Code, §§ 11026, 11153; *People v. Gandotra* (1992) 11 Cal.App.4th 1355, 1361–1362 [14 Cal.Rptr.2d 896].) Prescriptions are devices by which physicians and other authorized practitioners work to achieve legitimate medical purposes. (Health & Saf. Code, § 11153, subd. (a).) The protection of the health and safety of the public in obtaining medical prescriptions is critical. (See generally, Bus. & Prof. Code, § 4001.1 [protection of the public is "the highest priority" and "paramount" in the exercise by the California State Board of Pharmacy of its licensing, regulatory, and disciplinary functions].) Physicians, pharmacists, and patients must be able to rely on the integrity of the system. Section 11368 is aimed at helping preserve that integrity by prohibiting counterfeiting of a physician's authority to prescribe, deceiving of the pharmacist, corrupting the public's legitimate supply of medicine, and, potentially, defrauding of insurance companies or government programs. Far more is implicated than just an offender's personal involvement with drugs. (See *People v. Canty, supra,* 32 Cal.4th at p. 1279.) Even though section 11368 is not necessarily "commercial in nature" (*People v. Ferrando, supra,* 115 Cal.App.4th at p. 920) like the "sale, production, or manufacturing" offenses that are expressly excluded by Penal Code section 1210, subdivision (a), neither is it a *simple* drug possession or drug use offense.

In an attempt to argue his offense is still Proposition 36 eligible, defendant claims "Proposition 36 allows for application of its provisions to a broader range of nonviolen[t] drug offenses" than deferred entry of judgment under Penal Code sections 1000–1000.8, which is limited to expressly enumerated offenses, and, therefore, it is significant the Legislature amended the deferred entry of judgment statute in 1983 to add section 11368 as a qualifying offense when the controlled substance is for personal use. (Stats. 1983, ch. 1314, § 2, p. 5312.) "A comparison of Penal Code sections 1000 and 1210 shows the two statutory schemes are not identical in scope and the drafters of Proposition 36 did not intend to pattern the initiative after section 1000." (*People v. Sharp, supra,* 112 Cal.App.4th at p. 1341.) The Legislature's amendment of

the deferred entry of judgment statutes does not require a conclusion that section 11368 comes within Proposition 36.

■ Based both on the language and the express intent of Proposition 36, we conclude forgery of a prescription in violation of section 11368, even when intended to obtain drugs thereby entirely for personal use, does not come within the term "nonviolent drug possession offense" as defined by Penal Code section 1210, subdivision (a).

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 22, 2005.