[No. C048738. Third Dist. June 6, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN MICHAEL MONIZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, and IV of the Discussion.

**COUNSEL**

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez and Mathew Chan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RAYE, J.**—Late one night, Deputy Dan Skaggs pulled over a car driven by Danielle Giampappas for sporting expired tags. The deputy ordered Giampappas and her passenger, defendant Stephen Michael Moniz, out of the car. A search of the car, to which Giampappas consented, unearthed marijuana cigarettes, methamphetamine, and heroin.

A jury found defendant guilty of transporting heroin, transporting methamphetamine, possession of heroin, possession of methamphetamine, possession of drug paraphernalia, unauthorized possession of a hypodermic needle, and destroying or concealing evidence. (Health & Saf. Code, §§ 11352, subd. (a), 11379, subd. (a), 11350, subd. (a), 11377, subd. (a), 11364; Bus. & Prof. Code, § 4140; Pen. Code, § 135.)[1] Sentenced to seven years in state prison, defendant appeals, contending: (1) insufficient evidence supports his conviction for concealing evidence, (2) the court erred in instructing on concealing evidence, (3) ineffective assistance of counsel, (4) the court erred in finding his conviction for concealing evidence rendered him ineligible for Proposition 36 treatment, and (5) the court abused its discretion in denying his motion to dismiss under Penal Code section 1385. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

An information charged defendant with seven counts: transporting heroin (count 1), transporting methamphetamine (count 2), possession of heroin (count 3), possession of methamphetamine (count 4), possession of drug paraphernalia (count 5), unauthorized possession of a hypodermic needle (count 6), and destroying or concealing evidence (count 7). In addition, the information alleged defendant had served five prior separate prison terms, each within the meaning of section 667.5, subdivision (b).

A jury trial followed. The court granted defendant's motion to bifurcate trial on the prior prison term allegations.

Yolo County Sheriff's Deputy Dan Skaggs testified about the events the night of the search. Shortly after midnight on October 21, 2003, Skaggs made a traffic stop of a car with an expired vehicle registration tag. When Skaggs approached the vehicle, he saw Giampappas in the driver's seat and defendant in the passenger seat. Skaggs asked Giampappas for identification, which she began looking for in the car. After Giampappas failed to produce identification, Skaggs asked her to step out of the car.

Giampappas and Skaggs stood at the rear of the car, where defendant could not be seen, and spoke for a couple of minutes. After Giampappas gave her

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

name, Skaggs asked defendant the driver's name for verification. Defendant identified Giampappas as Danielle Chappa.

Skaggs then asked defendant for identification. Defendant responded that he had a credit card with his name on it and got out his wallet. As defendant looked through his wallet, Skaggs saw a plastic bag fall from his hand onto the car floor. The bag contained what Skaggs believed to be two marijuana cigarettes. Skaggs opened the door and asked defendant to get out of the car. As defendant got out, he used his foot to push the bag toward the seat. Skaggs handcuffed defendant and placed him in the patrol car.

After telling Giampappas about the marijuana, Skaggs obtained her permission to search the car. Skaggs placed Giampappas in the patrol car with defendant, leaving them alone for about 15 minutes. Skaggs's search of Giampappas's car revealed a crystalline-type substance spread on the passenger seat. Skaggs scooped up the substance into a plastic bag. Later tests showed the substance to weigh .21 grams and to contain methamphetamine. Skaggs testified that methamphetamine is generally transported in a container, not spread out on a seat.

Underneath the passenger seat, Skaggs found a glass smoking pipe similar to those used to smoke methamphetamine. Skaggs found a sunglasses case, an alcohol wipe, and a hypodermic syringe between the passenger seat and the center console. These items were not visible until Skaggs peeled back the edge of the seat.

The sunglasses case contained a piece of plastic with a hard brown substance inside. Subsequent tests established the substance to contain heroin weighing .38 grams. Skaggs found all the contraband around the passenger seat; he located no contraband around the driver's seat.

Skaggs asked Giampappas and defendant about the items; both denied any knowledge. Defendant told Skaggs he had not used illegal drugs for over a year and was currently participating in a methadone program. Skaggs placed both Giampappas and defendant under arrest and told them they would be tested for drugs. At that point, Giampappas claimed the drugs were hers.

Later drug tests revealed the presence of methamphetamine in defendant's blood. The absence of amphetamine in defendant's blood indicated he had recently used methamphetamine.

Giampappas testified she and defendant, a friend of several years, were driving to a casino when Skaggs pulled them over. Giampappas had picked

up the car earlier that day from the police impound, where it had been taken after her husband's arrest for a parole violation.

Defendant appeared somewhat stressed when they were stopped. When Giampappas gave Skaggs permission to search the car, she had no reason to believe he would find anything since she kept her car clean. She had no prior knowledge of anything illegal in the car.

Giampappas recognized the substance retrieved from the passenger seat as methamphetamine, since she had been a drug user for many years. However, Giampappas did not recognize the other substance as heroin, since she had never used heroin. Giampappas denied ownership of the smoking pipe, syringe, or sunglasses case.

After Skaggs handcuffed her, Giampappas told him the drugs he found were hers. Giampappas testified she lied because defendant told her he had money, and if she took the blame he would post her bail. Defendant said he could not go to jail because he had to go to the methadone clinic the following morning. Defendant encouraged her to claim the drugs were hers, and told Giampappas he would drive her car home so it would not be impounded.

Giampappas followed defendant's advice because she did not want to go to jail. She was unaware both she and defendant could be arrested for the "same thing." Giampappas asked Skaggs to release defendant, thinking defendant would bail her out of jail.

Giampappas also testified she lied when she told Skaggs her husband had been arrested for having illegal drugs in his car. In hindsight, she termed the lie "silly." Giampappas stated she expected defendant to do the right thing: "I was expecting the person who had the drugs in my car to step up to the plate, that's what they do in my neighborhood." She also lied when she told Skaggs she had not used drugs for the past four years; in fact, she had used methamphetamine the day before her arrest.

Although Giampappas insisted she knew nothing about the drugs, she entered a plea to possession of methamphetamine in exchange for a dismissal of all other counts and no prison time. Her plea was not conditioned on testimony against defendant and she was not promised anything for her testimony.

Defendant testified in his own behalf. He admitted to prior felony convictions for burglary and theft. Defendant stated he had known Giampappas for about eight months before their arrest. Giampappas's boyfriend was on parole

and the pair stayed with defendant. Giampappas's boyfriend had been arrested for possession of narcotics, and her car was impounded two or three days before the traffic stop.

When Skaggs pulled the car over, defendant was dozing. Defendant asked Giampappas, who seemed nervous, what was going on. Giampappas told him she did not have a license.

Giampappas got out of the car, returning to look for her driver's license. Giampappas opened the console in the center of the front seat, threw something at defendant, and told him to put it in the seat. When Giampappas opened the console, defendant saw the eyeglasses case. Defendant noticed some cellophane on the jacket he held over his arm. The cellophane fell to the floor as he attempted to retrieve his credit card from his wallet.

Defendant denied telling Giampappas to lie about ownership of the drugs. Nor did defendant offer to bail her out. Defendant denied possessing the methamphetamine or heroin found in the car. Defendant testified he did not intend to conceal the marijuana as he got out of the car.

During cross-examination, defendant testified he never used methamphetamine but stated someone slipped methamphetamine in his coffee. Although defendant previously used heroin, he testified he no longer uses heroin. Defendant also testified he previously took methadone for his heroin addiction but is currently taking LAAM (levo-alpha-acetyl-methadol) to treat the pain from his lung cancer. Defendant had tried to quit heroin on at least five occasions.

On rebuttal, Skaggs testified that after he asked Giampappas to get out of the car she never returned to the car.

The jury found defendant guilty on all counts. In the bifurcated trial before the court, the court found all prior prison term allegations true.

The trial court denied defendant's motion to strike his conviction on count 7, and found defendant ineligible for sentencing under Proposition 36. (§§ 1210, 1210.1.) The court sentenced defendant to seven years in state prison: the midterm of four years on count 1 plus three one-year prison term enhancements. The court imposed a concurrent three-year midterm on count 2 and stayed midterm sentences of two years each on counts 3 and 4 pursuant to section 654. The court struck the other two prison term enhancements. Defendant filed a timely notice of appeal.

## DISCUSSION

## I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. PROPOSITION 36 TREATMENT

Defendant argues the trial court erred in ruling his conviction for concealment of evidence was a misdemeanor not related to the use of drugs within the meaning of section 1210, subdivision (d), making defendant ineligible for Proposition 36 treatment. Defendant contends his conviction for concealing evidence is a misdemeanor related to the use of drugs, qualifying him for Proposition 36 treatment.

■ Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, " 'requires the court to grant probation and drug treatment to any defendant convicted of a nonviolent drug possession offense and prohibits incarceration as a condition of probation. [Citation.]' [Citation.] It is 'an alternative sentencing scheme for those convicted of certain narcotics offenses. In effect, it acts as an exception to the punishment specified in an individual narcotics offense.' " (*People v. Wheeler* (2005) 127 Cal.App.4th 873, 877 [26 Cal.Rptr.3d 138] (*Wheeler*).)

■ Section 1210.1, subdivision (b)(2) provides that a defendant is ineligible for probation and diversion if he or she has been convicted in the same proceeding of a misdemeanor not related to the use of drugs or any felony. (*People v. Canty* (2004) 32 Cal.4th 1266, 1272–1273 [14 Cal.Rptr.3d 1, 90 P.3d 1168] (*Canty*).) An offense is defined as one "not related to the use of drugs" if it does not involve the defendant's simple possession or use of drugs or drug paraphernalia, presence where drugs are being used, or failure to register as a drug offender, or any similar activity. (*Ibid.*)

The trial court denied defendant's request for Proposition 36 treatment: "Let me conclude that in reviewing the Canty case . . . it does not appear that concealment of evidence would be such as to enable Mr. Moniz to qualify for the treatment under 1210.1, that it is not related to the use of drugs within the meaning of 1210(d), it is an activity dissimilar because it is an obstruction of justice. And because he otherwise would qualify except for Count 7, but Count 7 is the disqualifier, I will find him not qualified for Proposition 36 treatment on that basis."

---

*See footnote, *ante*, page 86.

Both parties, and the trial court, rely on *Canty* to bolster their differing interpretations of section 1210.1. Therefore, we review *Canty* in some detail.

In *Canty*, the court considered whether a defendant convicted of transporting methamphetamine, a felony, and driving a vehicle while under the influence of a controlled substance, a misdemeanor, has been " 'convicted in the same proceeding of a misdemeanor not related to the use of drugs.' " (*Canty, supra,* 32 Cal.4th at p. 1273.) The court concluded a conviction for driving under the influence constituted a misdemeanor not related to drugs, and did not qualify the defendant for probation and treatment under Proposition 36. (32 Cal.4th at p. 1273.)

In reaching this conclusion, the Supreme Court engaged in a tripartite statutory analysis. First, the court noted that to be found guilty of driving under the influence of drugs in violation of Vehicle Code section 23152, subdivision (a), the defendant must have been appreciably impaired so that the defendant's ability to operate a vehicle was impacted. This differs from merely being under the influence of drugs. (*Canty, supra,* 32 Cal.4th at pp. 1278–1279.)

Second, the court observed that the conduct that is the central focus of simple possession and similar drug charges is the individual offender's own involvement with the prohibited substance. In contrast, the central focus in a driving under the influence charge is the individual's use of a vehicle. The court noted: "The gravamen of driving while under the influence is *driving* despite an impairment of capacity. [Citations.] That offense concerns the driver's activity as it actually or potentially affects or 'transacts' with other persons. In this respect, it is more similar to the 'commercial' drug offenses that expressly disqualify a defendant from receiving diversion." (*Canty, supra,* 32 Cal.4th at p. 1279.)

Third, the court concluded that drug and driving under the influence statutes protect different societal interests. The purpose of statutes proscribing being under the influence is to protect the user from the consequences of his or her own conduct. The purpose of statutes proscribing driving under the influence is to protect the public and guard against injury to others. (*Canty, supra,* 32 Cal.4th at p. 1279.)

The court also determined the intent behind Proposition 36 was to modify penalties for simple drug possession and not to change other criminal laws. (*Canty, supra,* 32 Cal.4th at pp. 1281–1282.) The court noted that if it were to interpret section 1210.1, subdivision (b)(2) not to preclude a defendant convicted of driving under the influence of drugs from receiving probation and treatment, the result would be inconsistent with the Vehicle Code's

design to punish impaired drivers identically, whether driving under the influence of drugs or alcohol. (*Canty*, at pp. 1281–1283.)

Defendant argues his situation differs from that of the defendant in *Canty*, since a conviction for concealing drugs differs significantly from the offense of driving under the influence of drugs or alcohol. To support this claim, defendant recreates the tripartite *Canty* analysis. First, defendant points out, concealing drugs does not involve impairment; instead, it is based on a defendant's possession of drugs. However, as the People note, what is relevant is that possession of drugs does not go hand in hand with destroying or concealing evidence. A defendant can possess drugs without violating section 135.

Second, defendant argues that while concealing drugs may require one step beyond mere possession, both offenses focus on the possession by the defendant and do not involve any type of commercial transaction or interaction with the public. However, section 135 is not directed toward drugs. Section 135 proscribes the destruction or concealment of any evidence, which may happen to be drugs. The central focus of section 135 is destruction of evidence, not possession of drugs.

Third, defendant argues, like mere possession of a drug and unlike driving under the influence, "there is no inherent risk to the public by the concealment of drugs from a law enforcement officer." However, as the People point out, the interest protected under section 135 differs from the interests protected by proscribing possession of drugs. The purpose of section 135 is to prevent the obstruction of justice. Through section 135, society seeks to prevent impediments to investigations and trials, and thus to preserve law enforcement and judicial resources.

■ After considering the factors examined in *Canty*, we agree with the trial court's determination that concealing or destroying evidence is not a misdemeanor related to drugs.

Our decision is bolstered by other recent cases finding that a variety of misdemeanors render a defendant ineligible for Proposition 36 treatment. In *Wheeler, supra*, 127 Cal.App.4th at page 881, the court found forgery of a medical prescription, even when intended to obtain drugs for personal use, does not come within the term " 'nonviolent drug possession offense.' " (See also *People v. Foreman* (2005) 126 Cal.App.4th 338, 343 [23 Cal.Rptr.3d 714].) Another court found the term "nonviolent drug possession offense" excludes the crime of possession of a controlled substance while in immediate personal possession of a firearm. (*In re Ogea* (2004) 121 Cal.App.4th 974, 985–987 [17 Cal.Rptr.3d 698].) The logic applied in these cases applies with equal force to the offense of concealing or destroying evidence.

## IV. DISMISSAL UNDER SECTION 1385[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 20, 2006, S144986.

---

[*]See footnote, *ante*, page 86.