Filed 2/19/26  P. v. Benitez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACOB ANDREW BENITEZ,<br><br>    Defendant and Appellant. | H051175<br>(Santa Clara County<br>Super. Ct. No. C1118634) |

In 2012, appellant Jacob Andrew Benitez pled no contest to multiple counts of second degree robbery, attempted robbery, and one count of possession of a firearm by a felon.  He also admitted to firearm enhancements during the commission of the robberies.  As part of a negotiated disposition in exchange for his plea, the trial court sentenced Benitez to a total term of 26 years in prison.

In 2020, the Secretary of the Department of Corrections and Rehabilitation (CDCR) recommended that Benitez's sentence be recalled and that he be resentenced pursuant to former Penal Code section 1170, subdivision (d). [1]  The recommendation was based on changes to applicable sentencing laws regarding personal firearm enhancements that had taken place since Benitez's original sentencing.  In 2023, after recalling Benitez's sentence and holding a hearing, the trial court declined to impose a different sentence.

---

[1] Unspecified statutory references are to the Penal Code.

On appeal, Benitez argues that the trial court abused its discretion by failing to apply the statutory presumption favoring recall and resentencing following a CDCR recommendation. (Former § 1170.03, subd. (b)(2), now § 1172.1, subd. (b)(2).) Benitez further contends that even if the trial court was correct in finding the presumption was not overcome, it abused its discretion in refusing to dismiss his gun enhancements. In the alternative, Benitez argues that to the extent he failed to object to the trial court's order during the resentencing hearing, he received ineffective assistance of counsel.

For the reasons discussed below, we find no abuse of discretion and affirm the trial court's order declining resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

#### 1. Charges, Plea Agreement, and Sentencing

On January 12, 2012, the Santa Clara County District Attorney's Office filed a first amended complaint charging Benitez and three co-defendants with 21 separate offenses. With respect to Benitez, the complaint charged him with 18 counts of second degree robbery (§§ 211 & 212.5, subd. (c); counts 1–12, 14–19), one count of attempted second degree robbery (§§ 664, 211 & 212.5, subd. (c); count 13), and one count of owning, purchasing, receiving and possession of a firearm by a felon (§ 12021, subd. (a)(1); count 20). The information further alleged the following weapons allegations: (1) Benitez personally used a firearm during the commission of the robberies and attempted robbery in counts 1, 4, 5, 13, 15, and 17 (§ 12022.53, subd. (b)); (2) Benitez personally and intentionally discharged a firearm during the commission of the robbery in count 2 ((§ 12022.53, subd. (c)); (3) Benitez personally used a deadly and dangerous weapon during the commission of the robberies in counts 3, 6, 7, 9, and 10 (§ 12022, subd. (b)(1); and (4) Benitez was armed with a firearm during the commission of the robberies in counts 11, 12, 14, 16, 18, and 19 (§ 12022, subd. (a)(1)). Finally, the information alleged that Benitez had a prior conviction for robbery, which constituted a prior serious felony

2

conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subdivision (b)–(i); 1170.21).

On November 8, 2012, Benitez entered a plea of no contest to 10 of the robbery charges in counts 3, 4, 5, 6, 7, 9, 10, 15, 17, and 18, the attempted robbery charge in count 13, and the possession of a firearm charge in count 20, and admitted the respective firearm allegations as to those counts. In exchange for his plea, the People agreed to a total sentence of 26 years in prison and moved to dismiss the remaining robbery charges in counts 1, 2, 8, 11, 12, 14, 16, and 19, as well as the prior serious felony and strike conviction allegations.

On April 26, 2013, the trial court sentenced Benitez to the stipulated aggregate term of 26 years in state prison, which consisted of the following: (1) the middle term of three years plus 10 years for the robbery charge in count 4 and the personal use of a firearm enhancement (§ 12022.53, subd. (b)); (2) three consecutive terms of one year (one third the middle term of three years) plus three years and four months (one third the middle term of 10 years) for the robbery charges in counts 5, 15, and 17, and the personal use of a firearm enhancements for those charges (§ 12022.53, subd. (b)); (3) one concurrent term of three years (the middle term) plus 10 years for the attempted robbery charge in count 13 and the personal use of a firearm enhancement (§ 12022.53, subd. (b)); (4) six concurrent terms of three years (the middle term) plus one year for the robbery charges in counts 3, 6, 7, 9, 10, and 18, and the personal use of a dangerous and deadly weapon enhancements for those charges (§ 12022, subd. (b)(1)); and (5) one concurrent term of two years (the middle term) for the possession of a firearm by a felon charge in count 20.

### 2. Section 1172.1 Resentencing Proceedings

#### a. CDCR Letter, Denial, and Appeal

In a letter to the trial court dated August 28, 2020, the CDCR Secretary recommended that Benitez's sentence be recalled and that he be resentenced pursuant to

3

former section 1170, subdivision (d)(1). The basis for the recommendation was a change in the law that gave trial courts the discretion to dismiss or strike a personal use of a firearm enhancement (see §§ 12022.53, subd. (h) & (a)(1), 1385). The Secretary stated that in light of "the enclosed documentation, it appears that inmate Bentiez's (*sic*) sentence warrants the attention of the court. Pursuant to PC Section 1170, subdivision (d)(1), as the Secretary, I recommend [Benitez's] sentence be recalled and that he be resentenced." A number of documents were included in the letter, including documents reflecting Benitez's participation in prison work assignments, education, and other self-help programming, and his prison disciplinary record, which reflected only one rule violation in 2015.

On October 21, 2020, the trial court sent a letter to the CDCR Secretary acknowledging receipt of the August 28, 2020 recommendation, but indicated it was declining to exercise its discretion to recall and resentence. The trial court stated that Benitez "benefitted from a generous plea bargain,' " and it therefore did not believe it would be in the interests of justice to resentence him after he had only served one third of his negotiated prison term.

Benitez appealed the trial court's decision. (*People v. Benitez* (Mar. 14, 2022, H048647) [nonpub. op].) (*Benitez*).)[2] While Benitez's appeal was pending, the Legislature signed Assembly Bill No. 1540 into law, which created former section 1170.03.[3] (Stats. 2021, ch. 719, § 3.1, eff. Jan. 1, 2022; Assembly Bill No. 1540 (2021–2022 Reg. Sess.) (Assembly Bill 1540).) Assembly Bill 1540 moved the recall and resentencing provisions of former section 1170(d)(1) to what is now section 1172.1 and

<hr />

[2] On our own motion, we take judicial notice of the opinion in Benitez's prior appeal in the same underlying case.

[3] Effective June 30, 2022, section 1170.03 was renumbered to section 1172.1 without any substantive changes. (Stats. 2022, ch. 58, § 9.) For the sake of clarity and consistency, we refer to section 1172.1 when addressing the statute.

provided specific procedures and guidelines for the trial court to follow when the CDCR recommends recall and resentencing.  (*Benitez, supra,* H048647.)  Accordingly, in its decision issued on March 14, 2022, a different panel of this court remanded the matter to the trial court for reconsideration in accordance with the newly enacted requirements under section 1172.1 (*Benitez, supra,* H048647.)

### b.  Proceedings on Remand

Following remand on April 13, 2022, Benitez filed a request for a resentencing hearing pursuant to section 1172.1 and later filed a supplemental resentencing brief with substantial documentation related to Benitez's postconviction conduct.  On December 19, 2022, the prosecution filed an opposition to Benitez's resentencing request.

On June 9, 2023, the trial court held a resentencing hearing and heard testimony from Benitez and his friend J.V.  At a subsequent hearing on June 22, 2023, the trial court heard arguments from both parties.  After stating its findings on the record, the trial court ultimately declined to impose a different sentence.

Benitez timely appealed.

## B.  Factual Background[4]

### 1.  September 11, 2011 robberies (counts 3, 4, and 5)

On September 11, 2011, Benitez robbed three 7-Elevens, including one store in Santa Clara and two different stores in Sunnyvale.

At the Santa Clara location, Benitez entered the store wearing a black ski mask and hooded sweatshirt, pointed a firearm at the clerk, and demanded money.  The clerk handed Benitez $184.66 from the register, and he fled.

At the first Sunnyvale location, Benitez entered the store, pointed a handgun at the clerk, and demanded that the clerk "give [him] the money."  After the clerk handed him a

---

[4] Our summary of the pertinent facts is drawn from the probation report, which is quoted by Benitez in his opening brief.

$10 bill from the register, Benitez demanded that the clerk give him "everything," then told the clerk to hand him a pack of cigarettes. After obtaining the cigarettes, Benitez fled.

At the second Sunnyvale location, Benitez entered the store wearing a black ski mask over his face and demanded money from the clerk. After the clerk gave him approximately $200 to $250 from the register, Benitez fled.

### 2. September 23, 2011 robberies (counts 6 and 7)

On September 23, 2011, Benitez robbed two 7-Elevens located in San Jose and Santa Clara, respectively. At the San Jose location, Benitez entered the store, pointed a semiautomatic handgun at the clerk, and demanded money. The clerk handed Benitez approximately $100, and Benitez fled on foot. At the Santa Clara location, Benitez entered the store wearing a mask over his face and a sweatshirt with the hood pulled over his head. Benitez then brandished a semiautomatic handgun at the clerk and demanded that the clerk "give [him] the money." The clerk complied and handed him $60, after which Benitez fled the store.

### 3. October 1, 2011 robberies (counts 9 and 10)

On October 1, 2011, Benitez robbed two separate 7-Elevens located in San Jose. At the first location, Benitez entered the store with his face covered and pointed a gun at two clerks while demanding money. One of the clerks handed him $112 and Benitez fled.

At the second location, Benitez entered the store with gloves on his hands and the hood of his sweatshirt covering his head, pointed a gun at the clerk, and demanded money. The clerk handed him $200, and Benitez fled.

### 4. October 19, 2011 attempted robbery (count 13)

On October 19, 2011, Benitez approached the drive-thru window of a Jack-In-The Box located in Campbell, wearing a black mask on his face and a hooded sweatshirt. Benitez then pointed a large revolver pistol at the employee working at the drive-thru

6

window, who ran away from the window and instructed other employees to follow him into the upstairs office. Once upstairs, the employee activated the robbery alarm, and Benitez fled.

### 5. *October 19, 2011 robbery (count 15)*

On October 19, 2011, Benitez entered a 7-Eleven store in San Jose wearing a black hooded sweatshirt, a black baseball hat, and a black full-face ski mask. Benitez then brandished a long-barreled black revolver and demanded that the clerk "give [him] the money" three times. After the clerk gave him approximately $200, Benitez fled on foot.

### 6. *October 22, 2011 robberies (counts 17 and 18)*

On October 22, 2011, Benitez entered a 7-Eleven store in San Jose wearing a hooded sweatshirt, a black ski mask, and gloves. Benitez pointed a pistol at the clerk and demanded money. As another customer attempted to leave the store, Benitez ordered the customer to go crouch behind the counter with the clerk and look to the ground. After the clerk handed Benitez approximately $100, Benitez approached the customer and demanded his wallet. Once he obtained the wallet, Benitez fled.

## II. DISCUSSION

### A. *Failure to Apply Presumption in Favor of Recalling and Resentencing*

Benitez argues that the trial court abused its discretion by declining to resentence him without making a finding that the statutory presumption under section 1172.1 in favor of resentencing was overcome. Benitez claims that while the court acknowledged the presumption and appeared to conclude that he did not pose a danger to public safety, the court still chose not to resentence him, which constituted an abuse of discretion. Further, Benitez claims that the court's error in declining to resentence him was prejudicial because there was insufficient evidence that he was a danger to society.

7

## 1. *Applicable Law and Standard of Review*

Prior to January 1, 2022, section 1170, former subdivision (d)(1) "authorize[d] the Secretary of the CDCR to recommend to the superior court that the court recall a previously imposed sentence and resentence the defendant. [Citation.] The CDCR recommendation furnishe[d] the court with jurisdiction it would not otherwise have to recall and resentence and [was] 'an invitation to the court to exercise its equitable jurisdiction.' [Citation.]" (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040 (*McMurray*).) Subsequently, Assembly Bill 1540, which came into effect on January 1, 2022, "moved the recall and resentencing provisions of former section 1170(d)(1) to new section 1170.03." (*McMurray, supra*, at p. 1038.) "[T]he Legislature repeatedly indicated that Assembly Bill 1540 was intended to 'make clarifying changes' to former section 1170(d)(1), including specifying the required procedure and guidelines when the CDCR recommends recall and resentencing. [Citation.]" (*McMurray,* at p. 1041.) Effective June 30, 2022, "[t]he Legislature … renumbered section 1170.03 to section 1172.1, but made no substantive changes. [Citation.]" (*People v. Salgado* (2022) 82 Cal.App.5th 376, 378, fn. 2.)

Section 1172.1 continues to provide that a trial court may recall and resentence a defendant at any time upon the recommendation of the Secretary or other specified public official. (§ 1172.1, subd. (a)(1); see former § 1170.03, subd. (a)(1).) Section 1172.1 also provides that if the "resentencing request … is from the Secretary of the Department of Corrections and Rehabilitation," then "[t]here *shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety*, as defined in subdivision (c) of Section 1170.18." (*Id.*, subd. (b)(2), italics added; see former § 1170.03, subd. (b)(2).) This presumption arises from the fact that the referring agency had already scrutinized this individual's case and determined the recommendation is appropriate. (*People v. Braggs* (2022) 85 Cal.App.5th 809, 819 (*Braggs*).)

Subdivision (c) of section 1170.18, in turn, provides that an " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The violent felonies listed in section 667, subdivision (e) are known as "super strikes." (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242.)

We review a superior court's ruling on a resentencing recommendation for abuse of discretion. (*People v. Mendez* (2021) 69 Cal.App.5th 347, 353; *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082.) A court abuses its discretion when it applies the wrong legal standard or bases its decision on express or implied factual findings that are not supported by substantial evidence. (*People v. Moine (*2021) 62 Cal.App.5th 440, 449; see also *People v. Knoller (*2007) 41 Cal.4th 139, 156 (*Knoller*).)

### 2. Relevant Procedural Background

#### a. Request for Resentencing and Opposition

After requesting resentencing on April 13, 2022 (following remand), Benitez filed a supplemental brief on July 7, 2022, which laid out a number of postconviction factors and factors in mitigation to support dismissal of the firearm enhancements. This included Benitez's description of his parents' toxic relationship during his childhood, which resulted in him being raised by his grandparents, and his drug use and gang involvement at a young age. Benitez also indicated that he took full responsibility for his crime and had taken substantial steps towards rehabilitation, including working while in prison, participating in positive programming and volunteering, and laudatory overall conduct, with only one rule violation reported during his imprisonment. Benitez further included several documents and letters of support, including a full plan for housing, parole compliance, and education and work options to prevent relapse.

In opposition, the People argued that a reduction in Benitez's sentence, which was already a negotiated disposition for less time than he could have potentially faced at trial,

would not be in the interests of justice or promote uniformity in sentencing. The People noted that of all of the co-defendants in Benitez's case, Benitez was the only one who had participated in all of the robberies charged. The People further claimed that the firearm enhancements should not be struck under the court's discretionary powers pursuant to section 1385, because Benitez "personally armed himself in seven (7) of the charged robberies, [] vicariously armed himself in the remaining counts … [and] discharged the firearm in one of the robberies, which would have enhanced his sentence 25 years if not dismissed pursuant to the negotiated plea." The People further asserted that Benitez posed a great risk to public safety if released based on his drug abuse issues, concerns about his financial instability—which the People alleged as the basis for the string of robberies committed, and lack of credibility about the extent of his rehabilitative efforts while in prison.

### b. *Hearing and Argument*

At the hearing on Benitez's petition on June 9, 2023, the court first heard testimony from Benitez, who indicated that he had substantial family connections and affiliations with the Norteño gang, but he had voluntarily chosen to leave the gang in 2013 after realizing that he might "lose the rest of [his] life" if he continued to associate with the gang and commit crimes on their behalf. He indicated that as a result of leaving the gang, he was able to work with other inmates and at-risk youth to help put them in a better position. He further testified that if he were to be released, he would be able to set firm boundaries and rely on the support of his wife and family to hold himself accountable and not engage in further criminal activity. Benitez also indicated that while he had previously used drugs, he no longer had any desire or cravings for drugs and did not view them as an obstacle to his successful rehabilitation.

Benitez's friend J.V. also testified briefly and indicated that if Benitez were to be released, he would be able to provide Benitez with full-time employment and housing if necessary.

10

At the continued hearing on June 22, 2023, Benitez's counsel argued that section 1172.1 specifically indicated that unless the record reflected indications of further dangerousness, resentencing should occur, and additionally noted that under section 1385, subdivision (c), a court was not permitted to impose sentencing on enhancements exceeding 20 years. Counsel also reiterated that Benitez's rehabilitative efforts in prison and substantial support network to assist him with successful reintegration to society, would justify a reduction in his sentence as per the CDCR's recommendation. In response, the People argued that the CDCR did not recommend a particular sentence or even a reduction in the sentence but only asked the court to "take another look" at whether it should strike the firearm enhancements when it previously did not have the discretion to do so. The People further argued that under *Braggs,* the statutory presumption in favor of recall and resentencing following a recommendation from the CDCR did not amount to a presumption in favor of the CDCR's recommended sentence, which had not even been provided in Benitez's matter. The People additionally noted that the trial court had actively been involved in assisting the parties in reaching the previous negotiated disposition, which included dismissal of numerous counts and enhancements, and sentencing other counts and enhancements concurrently, instead of consecutively. The People therefore argued that the currently imposed sentence was fair, and further reduction would not be in the interests of justice.

### c. *Trial Court Ruling*

The court first noted that in reviewing the sentence, "I (the court) did not restrict my thinking only to the discretion for the gun enhancements. I did try to look at everything again, okay." The court acknowledged that "there is a presumption in favor of recall and resentencing. The defendant's sentence has been recalled. And as you both point out and on the -- I guess it's Braggs, there is no presumption in the statute for resentencing to a lesser term of imprisonment."

11

The trial court subsequently indicated that it had reviewed the evidence presented by Benitez regarding his upbringing and gang affiliations but noted that the current offenses were not gang related or for the benefit of any criminal street gang. The court also noted that no evidence had been presented of physical abuse or childhood trauma.

The court then discussed Benitez's behavior and time in prison, and commended him for "adjust[ing] well," including his substantial family support, and participation and completion of multiple self-help activities. The court also found that Benitez had expressed genuine remorse for the robberies, as demonstrated from the apology letters he wrote to the victims.

The trial court next discussed at length the circumstances surrounding Benitez's initial plea and sentence as follows:

"Turning to Mr. Benitez's commitment. He was initially charged with 20 counts; 18 robberies, one attempted robbery, and one possession of a firearm by a felon. The robberies each included either a personal arming allegation, or a vicarious arming allegation, and the allegation of an intentional discharge of a firearm during a robbery. That was in one of the robberies, not in all of them.

"The complaint initially alleged a strike prior robbery and a Prop. 8 prior. He had three co-defendants. And it was also noted that he was implicated in two additional robbery events, but those events were not charged in the charging document that this one involved because he had reached a plea deal.

"By my calculation, his prison exposure, as originally charged, well exceeded 100 years. The defendant did agree to a negotiated disposition whereby he pled to eight robberies, one attempted robbery, and a possession of a firearm.

"The People agreed to dismiss the remaining charges: the intentional discharge of the firearm allegation, the strike allegation, and the 667(a) allegation as part of the plea bargain. The defendant agreed to the sentence of 26 years.

12

"Again, my calculation at this point, and I am sure that we discussed it during the plea negotiations, the defendant's prison exposure, as pled, exceeded 40 years. [¶] According to the letter from CDCR, the defendant either pointed a handgun at the victims of the robbery or brandished a handgun during nine of these robberies or attempts. His highest take from any of those armed robberies was about $200.

"In order to achieve the negotiated disposition, the Court imposed consecutive terms on only four of the robberies. Concurrent terms were imposed on other counts, and only four gun enhancements were imposed consecutively.

"During his testimony at this resentencing hearing, the defendant admitted that he deserved a prison sentence for his crimes, but he did not specifically testify whether he now thinks he should receive a lesser sentence than that to which he agreed in 2013.

"I believed at the time, and I continue to believe now, that the defendant benefited from excellent representation at the plea bargaining stage of the proceedings and that he benefited from a generous plea bargain offer from the prosecution. [¶] Further, he has been well represented at this recall and resentencing proceedings. [¶]

"As indicated, I did consider the factors relating to the defendant's youth at the time he committed the offenses. I have also considered that these offenses were committed with firearms, that he threatened the victims, and committed those crimes for little in the way of monetary reward. [¶] If the defendant was committing these crimes for acceptance by his confederates to impress them or for him to gain a reputation, it was ill advised. As noted above, he did not commit the robberies to benefit a criminal street gang.

"The Court finds the defendant's youth was not a contributing factor to the crime. There were 20 robberies that occurred over a period of months – I'm sorry, 19. And then we have the other two that weren't part of the case.

"The crimes demonstrated preparation. The defendant acted with co-defendants. He used firearms. These crimes were planned. They were not spontaneous, rash acts or

13

the result of a lack of judgment despite the fact that they were poor choices, and that's the reason for finding youth not to be a contributing factor.

"Despite these poor decisions, there are and must be consequences to his actions. Mr. Benitez admitted that during his testimony. I believe that the prison term was imposed for these offenses are proportionate to the crimes committed, as well as given his participation and that of the co-defendants, and that they're commensurate in terms imposed for other persons in similar circumstances to the defendant's situation."

Finally, the court discussed the gun enhancements and declined to dismiss them after making the following findings:

"I want to specifically address the imposition of gun enhancements. First, the defendant either pointed a gun at the victims or brandished a firearm during the nine robberies and attempted robbery to which he pled. But also, on many of the others that occurred, and I don't have in hand all of the facts relating to each of those.

"On one occasion, he discharged a firearm. And this allegation was dismissed as part of the plea bargain, but I think it's important to note that had that enhancement been found true, it would have added 25 years to his prison exposure. Since that time the Court would have discretion not to impose the 25, but at the time, it would have required a 25-year enhancement.

"I have considered whether to exercise newly conferred discretion and not impose some or all of the additional punishment for the gun enhancements which the defendant did admit. The Court cannot ignore the evidence in possession of the prosecution discussed during the plea phase that the defendant used a firearm in most of those 18, 19 robberies with which he was charged. [¶] He did not simply have the firearm in his waistband. He pointed it at most of the victims. Those actions had a profound effect on the victims. The Court did not impose all the punishments for the multiple gun enhancements, and that was done so that we can achieve the disposition that was negotiated.

14

"Under all the circumstances, the Court declines to exercise discretion at this time to withhold imposition of any of the gun enhancements previously imposed; to do so, would not, in the Court's opinion, be in the interest of justice.

"I recognize that the defendant, counsel, and family and friends will not applaud the Court's decision. To them I simply state that I have thought about this decision a great deal and carefully considered it. I sincerely hope that Mr. Benitez will continue to improve himself and reflect on his past, and I hope that he will continue his self-help efforts in CDCR, and I wish you good luck in your parole hearings.

"Therefore, after careful consideration of all of the circumstances regarding the defendant's age, participation in the offenses, his criminal history and all of the current rules and laws concerning sentencing, the Court is not persuaded that resentencing of the defendant is in the interest of justice. Therefore, the defendant's request for resentencing is denied."

### 3. *Analysis*[5]

As a preliminary matter, the Attorney General argues that Benitez forfeited any argument regarding application of the presumption under section 1172.1 by not objecting to the trial court's lack of findings on whether Benitez posed an unreasonable risk to public safety. However, the record reflects that Benitez's counsel clearly stated at the outset of his argument that his understanding of the presumption under section 1172.1 was that the court was obligated to resentence unless it found "indications of future dangerousness." Benitez's supplemental brief for resentencing also discussed the presumption at length and argued that it was applicable in his case because there was

---

[5] This court previously granted Benitez's request to file supplemental briefing on whether the trial court properly applied the requirements of section 1172.1. After the Attorney General filed a supplemental responsive brief, Benitez filed a request to file a supplemental reply brief addressing two cases raised in the Attorney General's briefing. Benitez's request to file a supplemental reply brief is hereby granted.

insufficient evidence to demonstrate he posed a risk of committing a "super strike" offense. Accordingly, we find that Benitez sufficiently raised the application of the presumption in the trial court such that he has not forfeited it on appeal.

Benitez argues that by acknowledging the presumption in favor of recall and resentencing, the trial court necessarily made a finding that he did not pose a danger to public safety, and the presumption was therefore not overcome. Accordingly, Benitez claims that the trial court wrongly concluded that it was not obligated to resentence him in accordance with the CDCR recommendation even though the presumption had not been overcome, therefore effectively disregarding the presumption entirely.

We disagree. First, we note that Benitez's contention reflects a misunderstanding of the term "resentencing." Benitez appears to claim that a court's imposition of a defendant's original sentence after recall cannot qualify as "resentencing" under the statutory framework. However, Benitez cites no authority, nor are we aware of any, that indicates that "resentencing" must result in a reduction of the original sentence. Indeed, as noted by the California Supreme Court, "once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose *any appropriate sentence*." (*People v. Padilla* (2022) 13 Cal.5th 152, 163, italics added.) Moreover, the plain language of section 1172.1 itself only indicates that the "new sentence" imposed upon resentencing must be "no greater than the initial sentence," (§ 1172.1, subd. (a)(1)) but does not otherwise obligate a court to impose a sentence less than the initial sentence.

Benitez's argument also misinterprets the holding in *Braggs, supra,* 85 Cal.App.5th 809, regarding the application of the presumption during section 1172.1 proceedings. In *Braggs,* the defendant, whose sentence had also been recommended for recall and resentencing by the CDCR, argued that the trial court failed to apply the presumption in favor of recall and resentencing, which was added to the statute shortly before his resentencing hearing, and its denial to impose the CDCR's recommended

16

sentence constituted an abuse of discretion because the record did not reflect he posed an unreasonable risk of danger to public safety. (*Id.* at pp. 818–819.) A different panel of this court found there was no prejudicial error because the trial court did, in fact, recall and resentence the defendant, even though the final sentence imposed was not the same as that recommended by the CDCR. (*Id.* at p. 819.) In reaching this conclusion, the court noted that it found "support for our interpretation of the statutory phrase 'presumption favoring recall and resentencing of the defendant' in the uncodified portion of the law that became section 1170.03, subdivision (b)(2) (now § 1172.1, subd. (b)(2)). The Legislature explained that '[i]t is the intent of the Legislature for judges to recognize the scrutiny that has already been brought to these referrals by the referring entity, and *to ensure that each referral be granted the court's consideration by* setting an initial status conference, recalling the sentence, and *providing the opportunity for resentencing* for every felony conviction referred by one of these entities.' (Stats. 2021, ch. 719, § 1, subd. (h), italics added.) The Legislature's intent was thus to 'ensure' that the Secretary's referral was given 'court[] consideration,' meaning by '*providing the opportunity* for resentencing.' (*Ibid.*, italics added.) Defendant in this case was given such consideration by the court, including the opportunity for resentencing." (*Braggs, supra,* 85 Cal.App.5th at p. 819.) In other words, as correctly noted by the Attorney General, *Braggs* concluded that the presumption only applies to the court's initial determination, after a CDCR recommendation, of whether to recall and resentence; however, once the sentence has been recalled, there is no requirement or mandate under section 1172.1 that the trial court actually modify the sentence to any particular degree. (*Braggs, supra,* at p. 819.)

In the instant matter, the trial court both acknowledged the presumption and unambiguously indicated that it was recalling Benitez's sentence. The trial court then afforded Benitez an opportunity for resentencing by holding a full evidentiary hearing and considering postconviction factors as provided under section 1172.1, as well as relevant changes to sentencing law, specifically section 1385 and the striking of firearm

17

enhancements. As a result, the trial court properly applied the presumption in its initial determination to recall the sentence, and provided Benitez with a full opportunity for resentencing; once it did so, it was no longer required to determine whether Benitez posed an unreasonable risk to public danger in deciding whether to modify his sentence. (See *Braggs, supra,* 85 Cal.App.5th at p. 820 [noting that the legislative history behind Assembly Bill 1540 clearly indicated that "the presumption is intended to apply to the initial determination of whether to grant a request to recall and resentence, but that the sentence ultimately imposed by the court is left to its discretion without any further application of the presumption."].)

In addition, Benitez claims that to the extent *Braggs* stands for the proposition that a trial court is not obligated to resentence to a reduced or lower sentence even if the presumption was overcome, such a holding would render the presumption superfluous, and the case was therefore wrongly decided. We find no merit to this contention. As discussed above, *Braggs* properly relied on the legislative history behind Assembly Bill 1540 in concluding that the presumption was meant to apply to the initial determination of whether to recall and resentence, not to the trial court's subsequent decision on whether to modify the sentence to a term lower than that originally imposed. Moreover, as noted above, the clear language of section 1172.1 reflects that once the trial court has recalled a sentence, it maintains broad discretion in resentencing a defendant, and the only limit on the court's sentencing authority is that the "new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).) Accordingly, we see no reason to look beyond the plain meaning of the statute, which reflects that the court is not obligated to reduce a defendant's sentence during resentencing. (See *People v. Canty* (2004) 32 Cal.4th 1266, 1276 ["If the language [of a statute] is clear and unambiguous, we follow the plain meaning"].)

We find no support for Benitez's claim that the trial court failed to apply the presumption in favor of recalling and resentencing.

18

## B. *Abuse of Discretion in Declining to Strike Enhancements*

### 1. *Applicable Law and Standard of Review*

Senate Bill No. 81, effective January 1, 2022, added subdivision (c) to section 1385. Section 1385, subdivision (c) provides, "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(1) & (2).) The mitigating circumstances identified in the subparagraphs include, among others: "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] "(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B) & (C).)

The California Supreme Court recently clarified the framework within which a trial court must review requests to strike enhancements under the current version of section 1385, subdivision (c). (See *People v. Walker* (2024) 16 Cal.5th 1024, 1033–1035 (*Walker*) [interpreting section 1385, subdivision (c)(2)].) *Walker* indicated that "absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Walker, supra,* at p. 1036.)

19

"This 'furtherance of justice' (§ 1385, subd. (c)(1)) inquiry requires a trial court's ongoing exercise of 'discretion' (*id.*, subd. (c)(2)).  Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' [Citations.]" (*Walker,* at p. 1033.)

In addition, in *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*), one of our appellate courts provided guidance on the meaning of "danger to public safety" under section 1385.  In determining whether dismissing an enhancement would endanger public safety, "[t]he plain words of the statute do not support [a] trial court's singular focus on whether the defendant *currently* poses a danger." (*Gonzalez, supra,* at p. 228.)  "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal . . . will impact the length of the defendant's sentence." (*Ibid*.)  Thus, a "currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until [he] is elderly." (*Ibid*.)

We review a trial court's decision not to strike a sentence enhancement under section 1385 for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 371; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).)  The abuse of discretion standard is highly deferential.  (*Mendoza*, *supra*, at p. 298.)  When, " ' " 'as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Ibid*.)

"We presume that the trial court acted to achieve legitimate sentencing objectives. [Citation.]  The burden is on the party challenging the sentencing decision to show that

the court abused its discretion. [Citation.]  We may not presume error from a silent record. [Citation.]  'Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules' [Citations.] ' " (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765 (*Knowles*).) In addition, as a general, rule " 'a trial court is presumed to have been aware of and followed the applicable law.'  [Citations.] …Thus, where a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 (*Stowell*).)

A trial court abuses its discretion by rendering a sentencing decision based on impermissible factors or on an incorrect legal standard.  (*Knoller, supra,* 41 Cal.4th at p. 156; see also *People v. Nakano* (2023) 89 Cal.App.5th 623, 635 [an abuse of discretion occurs when the trial court applies the " 'wrong legal standard' "]. )  " ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." ' " (*People v. Flores* (2020) 9 Cal.5th 371, 431.)

### 2. Analysis

#### a. Forfeiture

As a preliminary matter, Benitez acknowledges that trial counsel only raised one mitigating factor under section 1385, subdivision (c), namely, that the enhancements resulted in his sentence exceeding 20 years.  (§ 1385, subd. (c)(2)(C).)  However, he argues that another mitigating factor was present that also weighed greatly in favor of dismissal, namely, that multiple enhancements were alleged in his case.  (§ 1385, subd. (c)(2)(B).)  He claims that even though this factor was not addressed in the lower court, he may still raise it on appeal because the trial court was presumed to know the applicable laws relevant to sentencing, and his counsel was therefore not obligated to identify all possible mitigating factors under section 1385.  The Attorney General

21

responds that to the extent counsel did not raise the mitigating factor regarding multiple enhancements, such a claim is forfeited on appeal.

"[A] party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208.) Here, as Benitez admits, the record reflects that trial counsel did not raise the mitigating factor regarding multiple enhancements during sentencing, and the issue is therefore forfeited. However, because Benitez contends, assuming the issues are forfeited, his counsel was ineffective in failing to raise them below, we shall exercise our discretion to reach the merits of his contentions to forestall the claim of ineffective assistance of counsel. (See *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [an appellate court has authority to reach a forfeited claim].)

### b. *The Trial Court Properly Exercised Its Discretion in Declining to Dismiss the Enhancements*

Because both *Walker, supra,* 16 Cal.5th 1024 and *Gonzalez, supra,* 103 Cal.App.5th 215, were decided after the parties completed their initial briefing in this case, we requested that the parties submit supplemental briefing on the following two issues: "1. Please discuss the impact of the recent decisions in [*Walker, supra,* 16 Cal.5th 1024 and [*Gonzalez. supra,*103 Cal.App.5th 215] on the disposition of the instant matter. In particular, please address whether the trial court's ruling reflected that: (1) it had assigned "great weight" to the mitigating factors identified in Penal Code section 1385, subdivision (c), in declining to resentence appellant; and (2) it had considered whether appellant posed a risk to public safety if he were to be released early. [¶] 2. To the extent *Walker, supra,* 16 Cal.5th 1024, approved the interpretation of Penal Code section 1385 as set forth by this court in *People v. Ortiz* (2023) 87 Cal.App.5th 1087 (*Ortiz*), can we presume that the trial court was aware of and followed the holding in *Ortiz* in declining to strike appellant's firearm enhancements? (See, e.g., *Knowles, supra,* 105 Cal.App.5th 757, 765 [" 'Unless the record affirmatively demonstrates otherwise, the trial court is

deemed to have considered all the relevant sentencing factors set forth in the rules' [Citations.]"]; see also *Stowell, supra,* 31 Cal.4th 1107, 1114 [as a general rule, " 'a trial court is presumed to have been aware of and followed the applicable law.' [Citations.]"].)"

In his supplemental letter brief, Benitez argues that the trial court implicitly found that section 1385, subdivision (c) was inapplicable because it only discussed one mitigating factor—Benitez's youth—and concluded that this did not contribute to the offenses. However, because the trial court did not discuss the two mitigating factors cited by Benitez, namely, that multiple enhancements were alleged and that application of the enhancement could result in a sentence over 20 years, in its discussion, Benitez argues that it cannot be presumed that the court was aware of or gave these factors great weight, as required under *Walker*. Benitez also asserts that because the trial court appeared to conclude that section 1385, subdivision (c) did not apply, it cannot be presumed that the court was aware of and followed the ruling in *Ortiz* when making its ruling. Benitez contends that while the court did not discuss public safety in its findings, the record "compels the conclusion" that the court did not find Benitez would pose a danger to public safety at the time of his release, as required under *Gonzalez supra,* 103 Cal.App.5th at p. 228, based on the court's praise of Benitez during the sentencing hearing for his rehabilitative efforts in prison. Benitez further claims that the court's error was prejudicial and requires a reversal and remand for resentencing because, pursuant to the standard set forth in *People v. Salazar* (2023) 15 Cal.5th 416, 424, the record does not clearly indicate that the trial court would have still exercised its discretion not to dismiss the enhancements if it had the guidance provided in *Gonzalez* and *Walker*.

In its supplemental responsive brief, the Attorney General argues that the trial court's comments reflected that it implicitly found that Benitez would pose a future danger to public safety if he were to be released early. The Attorney General notes that in making its findings, the trial court did not find Benitez's youth or his former gang ties

23

to be contributing factors to the offenses, thus implicitly finding that "neither the absence of youth nor the breaking of gang ties would decrease the risk … to the public upon his release." The Attorney General further contends that the trial court's analysis reflects that it engaged in the "holistic" balancing required under *Walker* by affording great weight to the mitigating factors and concluding that these factors were "heavily" outweighed by the significant benefit Benitez received from his plea bargain. The Attorney General similarly argues that the trial court was aware of and followed the ruling in *Ortiz, supra,* 87 Cal.App.5th 1087, by identifying four countervailing factors that would make dismissal of the enhancements not in the interests of justice, namely: (1) the great benefit Benitez received from his plea bargain, which included dismissal of charges and enhancements that reduced his exposure to 40 years; (2) his sentence being commiserate with sentences in similar cases; (3) the benefit he received from the dismissal of an enhancement that would have added an additional 25 years to his sentence; and (4) the "profound effect" of Benitez's firearm use on the victims. The Attorney General therefore argues that the trial court properly exercised its discretion in finding that dismissal of the enhancements would not be the interests of justice.

In reviewing the trial court's findings, we agree with Benitez that the court did not explicitly conclude that dismissal of the enhancements would result in a danger to public safety. Indeed, the trial court did not discuss public safety in its findings, nor did it make any statements related to the possibility of Benitez committing further crimes if his sentence were to be reduced, and he were to be released early, following dismissal of the enhancements. (See *Gonzalez, supra,* 103 Cal.App.5th at p. 228.) Therefore, under *Walker,* when the trial court does not conclude that dismissal would result in a danger to public safety, the court must assign "great weight" to any mitigating factors, if present, and exercise its discretion in determining whether dismissal would be in the furtherance of justice.

24

As noted above, the *Walker* court held that the term "great weight" should be interpreted to mean that "absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Walker, supra,* 16 Cal.5th at p. 1036.) The *Walker* court specifically emphasized that "[w]ithout credible evidence to support findings on aggravating circumstances, judges could disregard mitigating factors without a proper basis for doing so. This would be incompatible with the 'great weight' the Legislature has attached to the enumerated mitigating circumstances." (*Ibid.*) In making this finding, the court indicated that it approved the analysis set forth in *Ortiz, supra,* 87 Cal.App.5th 1087, which concluded that "section 1385, subdivision (c)(2)'s mandate to give 'great weight' to enumerated mitigating circumstances requires a sentencing court to 'engage[] in a holistic balancing with *special emphasis* on the enumerated mitigating factors.' " (*Walker, supra,* 16 Cal.5th at p. 1034, quoting *Ortiz, supra,* at p. 1096.)

We recognize that *Walker* had not been decided at the time of the trial court's ruling, and that in making its findings, the trial court did not specifically use the word "mitigating factors," or explicitly discuss the mitigating factors listed under section 1385, subdivision (c).[6] However, there is also nothing in the record which would indicate the trial court misunderstood the statute or applied the wrong legal standard. As noted above, a silent record does not, on its own, reflect an abuse of discretion. We presume the trial

---

[6] While the trial court did discuss Benitez's youth, this is not an enumerated mitigating factor under section 1385, subdivision (c). We therefore find no merit to Benitez's claim that the trial court's finding that Benitez's youth was not a contributing factor to the offense reflected an implicit finding that section 1385, subdivision (c) was inapplicable to his resentencing.

25

court was aware of and followed the applicable law when making its ruling. (See *Knowles, supra,* 105 Cal.App.5th at p. 765; see also *Stowell, supra,* 31 Cal.4th at p. 1114.)

Applying our standard of review, we find no abuse of discretion in the trial court's decision not to dismiss the enhancements. We note that a trial court is not required to make any findings if it declines to dismiss an enhancement pursuant to section 1385. (See *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157 ["Section 1385, subdivision (a), requires a trial court to state its 'reasons for the dismissal . . . orally on the record,' but there is no similar statutory requirement when a court denies a request to dismiss an enhancement"].) Further, even without a finding that dismissal would endanger public safety, there is no requirement under section 1385 that a trial court dismiss the enhancements even if there is evidence of mitigating circumstances. In declining to strike the enhancements, the trial court expressly noted that in the considerable number of offenses committed, Benitez used a firearm *in every offense*, and such use had a "profound effect" on the victims, particularly in light of the minimal amount of money Benitez obtained from each robbery. These standards are enumerated factors under rule 4.421 of the California Rules of Court (see Cal. Rules of Court, rule 4.421(a)(2) [defendant being armed or using a firearm in the commission of the offense] and (a)(3) [vulnerability of victim]), which the *Walker* court has explained are properly part of an inquiry into the " 'furtherance of justice.' " (*Walker, supra*, 16 Cal.5th at p. 1033.) Benitez simply has not demonstrated that the trial court's ruling was arbitrary, capricious, or patently absurd such that it resulted in a manifest miscarriage of justice.

In conclusion, we find that the trial court did not abuse its discretion in declining to dismiss the enhancements based on its finding that doing so would not be in the furtherance of justice.

### III.    DISPOSITION

The trial court's order is affirmed.

26

_____
                                    Wilson, J.


WE CONCUR:




_____
                Danner, Acting P. J.




_____
                Bromberg, J.




*People v. Benitez*
H051175